SHULICK v RICHARDS

Docket No. 270916. Submitted December 13, 2006, at Lansing. Decided December 19, 2006, at 9:20 a.m.

Sheilah K. Shulick filed an action for child support in the Clinton Circuit Court, Family Division, against Jeffrey L. Richards, and was awarded sole legal and physical custody of the parties' minor children, while the defendant was awarded reasonable parenting time. The defendant subsequently moved to modify custody and clarify the parenting time. The court, Lisa Sullivan, J., entered an amended order granting the parties joint legal and physical custody and providing that, if the parties cannot agree on certain issues affecting the children, the plaintiff will have primary responsibility for making educational decisions and the defendant will have primary responsibility for health decisions. The plaintiff appealed.

The Court of Appeals *held*:

1. The abuse of discretion standard of review applicable in child-custody cases is the standard set forth in *Spalding v Spalding*, 355 Mich 382, 384-385 (1959), as reaffirmed by *Fletcher v Fletcher*, 447 Mich 871 (1994).

2. The trial court's finding that the parties could cooperate on important decisions concerning the children's welfare was not against the great weight of the evidence.

3. The trial court erred, however, by providing for a division of primary decision-making authority if the parties cannot agree. "Joint custody" means, in part, that the parents will share decision-making authority for important decisions affecting a child's welfare. MCL 722.26a(7)(b). Because a joint custody arrangement is available only if the parents will be able to cooperate and generally agree on these matters, MCL 722.26a(1)(b), it is clear that the Legislature did not intend the word "share" to mean an apportionment of decision-making authority. Rather, the parties must jointly participate in making the decisions. If the parents as joint custodians cannot agree on these matters, it is the court's duty to determine the issue in the best interests of the children. On remand, the trial court must remove the apportionment provision.

4. The trial court's findings with regard to the best-interest factors of MCL 722.23(c) and (j) were not against the great weight of the evidence. MCL 722.23(c) concerns, in part, the children's health care, and the evidence demonstrated that the plaintiff had neglected their dental care and was more concerned about her personal issues with the defendant than the children's health-care issues. MCL 722.23(j) involves facilitation and encouragement of a close parent-child relationship. The evidence indicated that the plaintiff had not fully cooperated with counseling, did not want the defendant to have a significant role with the children, and repeatedly violated the parenting-time order when she disagreed with the defendant.

5. The trial court did not palpably abuse its discretion by awarding joint custody and altering the parenting-time schedule. MCL 722.27(1)(c) provides that a court shall not change the established custody of a child unless clear and convincing evidence exists that the change is in the child's best interests. In this case, the trial court found clear and convincing evidence justifying the changes made, including a modification of the summer parenting-time schedule that neither party had requested.

Affirmed in part, reversed in part, and remanded.

1. PARENT AND CHILD — CHILD CUSTODY ACT — STANDARDS OF REVIEW — ABUSE OF DISCRETION.

The abuse of discretion standard of review applicable in child-custody cases is the standard set forth in *Spalding v Spalding*, 355 Mich 382, 384-385 (1959), as reaffirmed by *Fletcher v Fletcher*, 447 Mich 871 (1994) (MCL 722.28).

2. PARENT AND CHILD — JOINT CUSTODY.

A joint custody arrangement in which the parents share decision-making authority for important decisions affecting the welfare of the child requires that the parents jointly participate in those decisions; a trial court may not apportion this decision-making authority between the parents if they cannot agree on decisions; if the parents as joint custodians cannot agree, the court must determine the issue in the child's best interests (MCL 722.26a[1][b], [7][b]).

*Philip E. Hodgman* for the plaintiff.

*Mallory, Cunningham, Lapka & Scott, PLLC* (by *Todd S. Selin*), for the defendant.

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

SERVITTO, P.J. Plaintiff appeals as of right an order changing the physical and legal custody of the parties' minor children from plaintiff, solely, to the parties, jointly. We hold that the trial court's finding that the parties could cooperate on important decisions concerning the welfare of the children was not against the great weight of the evidence and that the trial court did not abuse its discretion in awarding the parties joint legal and physical custody of the minor children. We also conclude, however, that the trial court erred in dividing the decision-making authority between the parties in the event that they cannot agree on decisions affecting the welfare of their children and thus remand to the trial court for removal of this provision from the order.

The parties to this action were never married. This action was initiated in 2001, when plaintiff filed a complaint for support, naming defendant as the father of two minor children. Defendant acknowledged paternity, and a support order was entered shortly thereafter. The support order included provisions awarding sole legal and physical custody of the minor children to plaintiff and awarding defendant reasonable parenting time. On October 7, 2002, an order was entered awarding defendant specific parenting time: alternate weekends from Friday at 5:30 p.m. until Sunday at 7:00 p.m., every Tuesday and Thursday from 5:30 p.m. until the following morning when school or day care began, and alternate holidays.

In October 2005, defendant moved to modify custody and clarify the parenting time. Specifically, defendant sought joint legal and physical custody of the children and requested that parenting time be modified to allow him to pick the children up from day care. A hearing

followed, and, on May 24, 2006, an amended order was entered awarding the parties joint physical and legal custody of the minor children. The order further contained a provision that if the parties were unable to agree on issues affecting the children's health, education, and welfare, plaintiff would have the primary responsibility for making educational decisions and defendant would have the primary responsibility for making health decisions.

MCL 722.28 provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

There are thus three different standards of review applicable to child-custody cases. The clear legal error standard applies when the trial court errs in its choice, interpretation, or application of the existing law. *LaFleche v Ybarra,* 242 Mich App 692, 695; 619 NW2d 738 (2000). Findings of fact are reviewed pursuant to the great weight of the evidence standard. In accord with that standard, this Court will sustain the trial court's factual findings unless "the evidence clearly preponderates in the opposite direction." *Id.* Discretionary rulings, including a trial court's determination on the issue of custody, are reviewed for an abuse of discretion. *Id.*

Because there has been much discussion of late concerning what, exactly, an "abuse of discretion" standard entails, we take this opportunity to clarify the abuse of discretion standard applicable in child-custody cases. In *Spalding v Spalding,* 355 Mich 382, 384; 94 NW2d 810 (1959) (addressing a request for an increase

in child support), our Supreme Court stated that where the exercise of discretion turns upon a factual determination made by the trier of fact, "an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts." According to the *Spalding* Court:

> The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. [*Id.* at 384-385.]

In *Maldonado v Ford Motor Co*, 476 Mich 372; 719 NW2d 809 (2006), however, our Supreme Court specifically rejected the formulation of the abuse of discretion standard set forth in *Spalding*. The Court instead found the standard set forth in *People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003), preferable and adopted it as the "default" abuse of discretion standard. *Maldonado*, 476 Mich at 388. *Babcock* defined "abuse of discretion" as follows:

> [A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. . . . An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside this principled range of outcomes." [*Babcock,* 469 Mich at 269.]

Notably, by characterizing the "principled outcomes" standard as the default standard, *Maldonado* recognized that another formulation could exist. Accordingly, a default abuse of discretion standard of review is an assumed or assigned standard of review unless the law

instructs otherwise. *Fletcher v Fletcher*, 447 Mich 871; 526 NW2d 889 (1994), has instructed otherwise with respect to MCL 722.28.

In *Fletcher*, our Supreme Court interpreted the standards of review enumerated in MCL 722.28. With respect to the "palpable abuse of discretion" standard set forth in the statute, *Fletcher* concluded that "the Legislature's reference to 'palpable,' the same word this Court used in *Spalding*, manifests its intent to adopt a high standard of review not significantly unlike the *Spalding* standard." *Fletcher*, 447 Mich at 880. The implication is that when the Legislature wrote MCL 722.28, it did so with the knowledge of *Spalding* and purposefully employed a word used by the *Spalding* Court, thereby signaling its adoption of the standard as articulated in *Spalding*. Long-standing rules of statutory construction indicate that the Legislature's intent " 'must prevail regardless of any conflicting rule of statutory construction.' " *Green Oak Twp v Munzel*, 255 Mich App 235, 240; 661 NW2d 243 (2003) (citation omitted). Indeed, "[i]t is a well-established principle of statutory construction that the Legislature is presumed to act with knowledge of statutory interpretations by" Michigan's appellate courts. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991).

Given *Fletcher*'s focus on the similarity in language between *Spalding* and MCL 722.28 and how this informs of legislative intent, the *Fletcher* formulation of the abuse of discretion standard applies here. Thus, the trial court's custody decision is entitled to the utmost level of deference. Having clarified the abuse of discretion standard applicable in this case, we now turn to the specific issues raised by plaintiff on appeal.

Plaintiff first contends that the trial court abused its discretion in awarding joint legal custody of the minor

children in light of the parties' inability to cooperate or agree regarding important decisions affecting the children's welfare. We disagree.

The Child Custody Act, MCL 722.21 *et seq.*, governs child-custody disputes between parents. Pursuant to MCL 722.26a(1), in custody disputes between parents, the parents shall be advised of joint custody, and, "[a]t the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request."

> "[J]oint custody" means an order of the court in which 1 or both of the following is specified:
>
> (a) That the child shall reside alternately for specific periods with each of the parents.
>
> (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [MCL 722.26a(7).]

MCL 722.26a(1) further provides:

> The court shall determine whether joint custody is in the best interest of the child by considering the following factors:
>
> (a) The factors enumerated in section 3 ["best interest" factors].
>
> (b) Whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child.

On the issue of legal custody, plaintiff challenges only factor b.

Although it expressed some reservations, the trial court determined that the parties had recently displayed a willingness to "talk about things and get things done," so joint legal custody was appropriate. While there was certainly evidence presented that the parties harbored some personal animosity and had some diffi-

culty communicating in the past, both parties testified that their communications had recently improved. Defendant specifically testified that he believed they could work together for the overall best interests of the children. While plaintiff expressed some concern about whether they would be able to continue to work together in the future on things such as taking the children to events, she testified that she would ideally want to have defendant's help and input in making educational decisions for the children. In addition, the parties' testimony indicates that despite periodic problems, they were able to cooperate and reach compromises for the best interests of the children, for instance, by determining their own shared holiday schedule rather than relying on the previous court order for an alternating holiday schedule. As such, the trial court's finding that the parties could cooperate on important decisions concerning the welfare of the children was not against the great weight of the evidence.

Plaintiff also argues that the trial court improperly divided the issues for primary decision-making responsibility between the parties.[1] We agree.

"Joint custody" means, in part, that the parents will share decision-making authority for the important decisions affecting the welfare of the child. MCL 722.26a(7)(b). Medical and educational decisions are clearly "important decisions affecting the welfare of" the children. See, e.g., *Lombardo v Lombardo*, 202 Mich App 151; 507 NW2d 788 (1993). Thus, the issue becomes what is meant by the phrase "share decision-making authority."

---

[1] Although this issue is unpreserved, this Court may consider unpreserved claims if consideration of the issue is necessary to a proper determination of the case. *Providence Hosp v Nat'l Labor Union Health & Welfare Fund,* 162 Mich App 191, 195; 412 NW2d 690 (1987).

The custody act does not define the word "share." However, courts may consult dictionary definitions to determine the ordinary meaning of undefined statutory terms. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 316-317; 645 NW2d 34 (2002). The term "share" has multiple meanings, including "to divide and distribute in shares; apportion" and "to use, participate in, receive, . . . jointly." *Random House Webster's College Dictionary* (1997). While it can be argued that under a joint legal custody arrangement the parties must "jointly" participate in making decisions affecting the child's welfare, it can also be reasonably argued that the custody act recognizes that an "apportionment" of ultimate decision-making authority is in keeping with the spirit of a joint custody arrangement. However, because MCL 722.26a(1)(b) provides that a joint custody arrangement "is available only where 'the parents will be able to cooperate [and generally agree on matters concerning important decisions affecting the welfare of]' their children," *Schwiesow v Schwiesow*, 159 Mich App 548, 559; 406 NW2d 878 (1987) (quoting MCL 722.26a[1][b] [alteration added]), we conclude that the Legislature did not intend to provide for a joint custody arrangement in which such important decisions are apportioned. There would be no reason for a trial court to have to conclude the parents can "cooperate and generally agree" if the parents would not have to reach any agreement because of an apportionment of authority.

As this Court noted in *Lombardo*, "the Legislature has not provided guidance concerning how to resolve disputes involving 'important decisions affecting the welfare of the child' that arise between joint custodial parents." *Lombardo*, 202 Mich App at 157-158. Observing that "joint custody" by definition in Michigan means that the parents share decision-making author-

ity with respect to issues affecting the welfare of the child, *Lombardo* held that "where the parents as joint custodians cannot agree on important matters such as education, it is the court's duty to determine the issue in the best interests of the child." *Id.* at 159.

While this Court recognizes that the trial court may well have been attempting to preempt repeated appearances in court by the parties in the event that they could not agree on decisions affecting the welfare of their children, this "fallback" plan effectively brings an end to the parties' "shar[ed] decision-making authority as to the important decisions affecting the welfare of" their children. MCL 722.26a(7)(b). The trial court thus erred in providing for a fallback division of authority if the parties here are unable to cooperate and agree on the important decisions regarding their children, and a remand is necessary to remove the fallback provision. If joint custody remains after remand, any subsequent change in the custody arrangement predicated on an inability of the parties to cooperate and agree on important decisions affecting their children must meet the requirements of the custody act.

Plaintiff next argues that the trial court's grant of joint physical custody to the parties was against the great weight of the evidence and an abuse of discretion. We disagree.

When confronted with a petition to change custody, the trial court's initial inquiry is whether an established custodial environment exists. *LaFleche*, 242 Mich App at 695-696. The court shall not change the established custody of the child unless clear and convincing evidence is presented that the change is in the best interests of the child. MCL 722.27(1)(c); *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). This standard applies whether there is an established

custodial environment with one parent or with both parents. See *Jack v Jack,* 239 Mich App 668, 670-671; 610 NW2d 231 (2000).

The trial court found that an established custodial environment existed with both parents.[2] Thus, defendant had to establish by clear and convincing evidence that any change in custody was in the best interests of the children. The Child Custody Act sets forth the relevant criteria for determining a child's best interests:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

---

[2] Neither party challenges this finding on appeal.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

On appeal, plaintiff challenges the trial court's findings with regard to factors c and j.

In evaluating factor c, the trial court indicated that while both parties were employed, defendant's employment had been more stable over the past several years. The trial court also found the history of health, dental, and mental health care for the children to be of great concern, ultimately determining that factor c favored defendant.

Evidence at the hearing demonstrated that the children were five and seven, yet plaintiff had not taken them to a dentist until after defendant filed his motion for a change of custody. Even in young children, regular dental hygiene is of obvious importance. Moreover, a visit to the dentist was also advisable when, as noted by the trial court, one of the children continued to use a pacifier beyond his toddler years, which could result in misalignment of his primary teeth.

Additional evidence was presented that when defendant picked one of the children up from school because of illness and took her to the doctor, plaintiff was more concerned about the fact that defendant had taken the child to the doctor during her parenting time than the

child's treatment. Plaintiff also sought counseling for one of the children without discussing the issue with defendant and did not keep defendant informed about the decision. Moreover, when plaintiff had concerns about the children, rather than discuss those concerns with defendant, she either did not do as he suggested or denied him parenting time. These and other circumstances established at the hearing indicate that plaintiff was more concerned about her personal issues with defendant than about the children's best interests with regard to their health issues. Considering all the foregoing, the trial court's finding that factor c favored defendant was not against the great weight of the evidence.

With respect to factor j, the trial court noted that this was the factor the court weighed most heavily and that this factor significantly favored defendant. This finding was not against the great weight of the evidence.

The trial court required the parties to attend communication counseling to assist them in learning to better cooperate on issues concerning the children. The initial counselor withdrew, however, because plaintiff did not cooperate in setting up an appointment. A second counselor was more successful in scheduling an appointment, but indicated that plaintiff prevented any progress in communication therapy and that he could not help her. The counselor further testified at the hearing that, while defendant had the apparent ability to communicate and cooperate for the best interests of the children, plaintiff did not want defendant to have any significant role with the children and wanted to minimize the time he had with them. The record also supported a finding of repeated parenting-time violations by plaintiff when she disagreed with defendant. Given all of this, the trial's court's decision that factor j favored defendant is not against the great weight of the evidence.

Further, the court did not abuse its discretion by awarding joint custody to the parties and altering the parenting-time schedule after the court found that there was clear and convincing evidence to do so. The court found that it was beneficial for the children to see both parents and, thus, determined that only minor alterations to the physical custody arrangement were required. Accordingly, for the school year the court maintained the previous parenting-time schedule. However, the court determined that a schedule of alternating weeks would be more appropriate during the summer.

On appeal, plaintiff complains that no one requested this modification of the parenting-time schedule. However, custody disputes must be resolved in the best interests of the children. MCL 722.27(1). Plaintiff does not assert that the new custody arrangement is not in the best interests of the children. Further, this Court sees the obvious benefits to the children of not having to switch homes every few days in the summer, because the new schedule would permit the parties to take a several-day vacation with the children during the summer months, rather than being limited to weekend outings. Accordingly, the trial court's findings were not against the great weight of the evidence, and the trial court did not commit a palpable abuse of discretion in awarding custody and parenting time as it did.

Affirmed in part, reversed in part, and remanded for removal of the provision dividing the decision-making authority between the parties in the event that they cannot agree on decisions affecting the welfare of their children. We do not retain jurisdiction.