# STATE OF MICHIGAN

# COURT OF APPEALS

---

BILLIE JO DEBOER,

Plaintiff-Appellee,

v

CHARLES STRICKLAND a/k/a CHASE
STRICKLAND,

Defendant-Appellant.

UNPUBLISHED
April 28, 2016

No. 329765
Kent Circuit Court
LC No. 10-012449-DC

---

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right an October 6, 2015, circuit court order denying his motion for parenting time with his minor child AS (d/o/b 8/30/2007). For the reasons set forth in more detail below, we vacate the circuit court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant is the father of AS, who was born on August 30, 2007. The biological mother is plaintiff Billie Jo DeBoer. Plaintiff and defendant lived together for approximately four years from 2006 to 2010, but did not marry. Plaintiff and defendant had a contentious relationship and it appears that there was a physical altercation between the parties on the night of AS' birth, which prompted involvement of Child Protective Services (CPS).

At some point, the circuit court assumed jurisdiction over AS and the child was placed in foster care for a time. AS was eventually reunited with plaintiff in August 2010 after plaintiff and defendant separated. On December 6, 2010, plaintiff filed a complaint for custody. At that time, defendant exercised parenting time with AS for about two hours per week.

On January 21, 2011, the circuit court entered a temporary order awarding plaintiff physical and legal custody of AS. The court awarded defendant unsupervised weekly parenting time on Saturdays from 11:00 a.m. to 5:00 p.m. The court also ordered defendant to undergo a psychiatric evaluation and indicated that it would consider "joint legal custody and expanded parenting time" pending submission of the evaluation to the court. In addition, on April 27, 2011, the court granted plaintiff a personal protection order (PPO) against defendant.

-1-

On May 29, 2011, defendant was scheduled to have unsupervised parenting time with AS, however, defendant did not return AS to plaintiff at the appointed time, instead keeping her overnight. Plaintiff called the police who appeared at defendant's residence the next day to retrieve AS. Thereafter, plaintiff moved to suspend parenting time. The circuit court entered an ex-parte order suspending parenting time on May 31, 2011. Following a hearing, on June 19, 2011, the circuit court entered an order reducing defendant's parenting time to one hour per week of supervised visitation at Journies, Inc., a social service agency. Initially, defendant refused to participate in supervised parenting time because he considered it to be "degrading." Ultimately, however, defendant participated in six supervised parenting time visits at Journies.

On October 20, 2011, defendant moved to modify parenting time. Thereafter, the FOC prepared a report, recommendation and proposed order. The report chronicled the multiple instances of domestic violence that led to CPS involvement and indicated that plaintiff also had 29 prior involvements with CPS. However, the report also indicated that defendant completed a domestic violence program, work crew, and satisfied all of his financial obligations to the court. The FOC indicated that defendant "continues to have issues with his temper," and the FOC had continuing concerns. The FOC summarized as follows:

> [T]he information obtained does not clearly support that [defendant's] efforts to obtain parenting time with his daughter are solely, or even primarily, motivated by his desire to maintain a relationship with her; if it was, he would be seeing his daughter no matter what kind of restrictions were in place. Rather, it would appear that he is much more interested in righting the perceived wrongs within the "system(s);" which includes the Foster Care System, the Secretary of State, and the Judicial System. I am not saying he doesn't have the right to address and/or seek changes to these systems, he does; just not at the expense of seeing their daughter. Finally, it does not appear that [defendant] has a history of maintaining a stable home environment in which to exercise parenting time.

The FOC recommended that defendant's supervised parenting time remain unchanged and that plaintiff mother retain full legal custody of AS.

On December 28, 2011, defendant objected to the FOC's report. Defendant's motion was referred to an FOC referee; in the meantime, on January 5, 2011, the trial court entered an order indicating that it would adopt the FOC's recommendations regarding parenting time. The court indicated that it would reexamine parenting time after defendant completed the supervised parenting time at Journies.[1]

Thereafter, on February 29, 2012, the trial court reversed itself and entered an order vacating its January 5, 2012 order, finding that defendant raised valid objections to the FOC's report and recommendation. The court remanded the matter back to an FOC referee for a

---

[1] This Court denied defendant's application for leave to appeal the November 23, 2011 order. *DeBoer v Strickland I*, unpublished order of the Court of Appeals, entered February 3, 2012, (Docket No. 307380).

hearing on defendant's objections. Following the hearing, the FOC again recommended that the court deny defendant's request for unsupervised visitation and for joint legal custody of AS.

On April 20, 2012, the circuit court entered an order adopting the FOC's recommendations. Defendant objected and on June 12, 2012, the circuit court denied defendant's objection, explaining in relevant part as follows:

> The Court recognizes the defendant's desire to see his child outside of supervised visits. However, the Court is mindful of the episode on May 29, 2011 in which Grand Rapids police physically retrieved the minor child from the defendant's home. Supervised parenting time was offered since that incident. The defendant reported that in June 2011 he moved from the Grand Rapids area to Shelbyville, Michigan. He subsequently returned to Grand Rapids in October 2011. The defendant stated he began to utilize supervised parenting time beginning in February 2012. Since April 9, 2012, the defendant reports he has appeared at Journies five times. The Court must see consistency in supervised visitation before it will move on to unsupervised parenting time.

> The defendant shall provide documentation from Journies in regard to the supervised visits. When the Court is satisfied that he has acted appropriately during supervised parenting time, the Court will consider expanding his parenting time. . . .

Following the June 12, 2012 order, defendant filed multiple additional motions concerning parenting time. The circuit court denied defendant's motions, indicating that the June 12, 2012 order clearly set forth the steps defendant needed to take before the court would consider unsupervised parenting time.

In an August 31, 2012, order, the trial court transferred supervised parenting time to the YWCA Safe Connections program and a September 12, 2012, order indicated that the transfer was necessitated because defendant refused to accommodate Journies' schedule. However, a report completed by Journies' does not support that finding. Instead, the Journies report summarized six parenting time visits that were paid for through an "Access and Visitation Grant." For the most part, the report reflected positively on defendant's progress with AS. Journies indicated that the visits ended after defendant requested evening visits and after Journies was unable to contact plaintiff to arrange Tuesday or Friday evening visits because plaintiff disconnected her phone. The report concluded by stating, "Journies is happy to provide services to this family if the party should agree to any other times when the room and a supervisor is available."

On February 8, 2012, defendant once again moved for unsupervised parenting time. Defendant attached a letter from the YWCA Safe Connections program that indicated defendant had completed 12 of 16 supervised parenting time sessions. However, the letter indicated as follows:

> The strengths identified within this category are: minor issues in adhering to the parenting time schedule have not led to significant problems, participant generally

-3-

adheres to expectations of timeliness in attendance. Risk factors in this category are identified as: an inability to adhere to a program rules has led to corrective actions during sessions.

\* \* \*

Staff has had to intervene numerous times during parenting time. On 10/12/12, Mr. Strickland questioned the child extensively about warts that were on her hand. Mr. Strickland also began to take pictures of the warts and stated to the child that her mother was "supposed to take you to the doctor." Staff asked him to change the subject and focus on the time that he has with [AS]. On 11/16/12, the monitor intervened when Mr. Strickland began to video record his interactions with [AS]. Mr. Strickland ignored the monitor's request and continued with the recording. He then took a picture of the monitor and stated that he was only taking pictures of [AS]. Video recording is not allowed in Safe Connections and Mr. Strickland was informed of this policy during his intake assessment.

\* \* \*

Mr. Strickland does not accept redirection positively from monitors and discusses how his constitutional rights are being violated. On 12/21/12, Mr. Strickland brought a needle and peroxide to "clean" [AS'] ear. When staff asked him to not use the needle, he proceeded to use it on the other ear. The monitor then told him for a second time to put the needle away. Mr. Strickland responded by yelling at the monitor in front of [AS] . . . He also refused to get [AS] ready to leave when his parenting time was over . . . After [AS] was returned to her mother, Mr. Strickland became agitated and screamed at staff. He got close to the monitor's face and yelled: "She has an infection! How do you not understand?" He was dismissive and condescending towards the monitor . . . .

The report did indicate positives, including that AS "participates positively in parenting time sessions," but noted that defendant "exhibits a marginal sense of empathy towards the child." The report stated that AS "informed her father that she wanted to have contact with him but that she was also afraid of him." The report also stated that defendant parked in the wrong parking location, which was a violation of the rules. Despite identifying these weaknesses, the YWCA did not discharge defendant "unsuccessfully," as the circuit court concluded, but rather stated that "Safe Connections is fully able to continue to offer supervised parenting time to this family."

In his motion for unsupervised parenting time, defendant argued that the report "is garbage and slanderous!" Defendant stated that the YWCA would not include any "good stuff" about him and was "setting me and my child up to fail." The circuit court denied defendant's motion on February 15, 2013.

On April 7, 2015, defendant again moved for unsupervised parenting time. The circuit court held a hearing on April 24, 2015, where only defendant was present. At the hearing, the circuit court summarized the history of the case and indicated that defendant was required to

complete supervised parenting time before he was eligible for unsupervised parenting time. The court indicated that Journies terminated supervised parenting time because "among other things, [defendant] was unwilling to accommodate Journies' scheduled parenting time for him." The court indicated that defendant was given a second chance at supervised parenting time at the YWCA, "[a]nd then, it doesn't work out at the Y either . . . And so you were given an opportunity to establish appropriate parenting time at a second supervising agency and they also terminated unsuccessfully." The court then explained as follows:

> So that's sort of the history and now you come back and it certainly sounds to me after reading this like you may have done some good things since the last time I saw you . . . But what you still haven't done is to complete any kind of supervised parenting time to show me that I should be thinking about expanding it to unsupervised parenting time. What has changed since we've been through this a million times . . . about supervised parenting time at an agency? The only thing so far in my view that's happened is, you got tossed out of both programs that we tried. So convince me.

The trial court also noted that defendant previously wrote letters to state senators indicating that if he did not get what he wanted, "that you might just have to pull a Gabrielle Giffords." Defendant disputed the court's assertion.

Defendant acknowledged that his unsupervised parenting time was suspended when he kept AS beyond his allotted time on Memorial Day weekend 2011 necessitating police involvement. Defendant admitted "[t]hat was my mistake . . . I should have communicated that with the - - - with the mother." However, defendant argued that, the previous month, AS stayed overnight, presumably beyond his parenting time, and "Nobody cared." Defendant argued that he did not have any felony convictions, he did not have any recent misdemeanors or DUIs, and he recently completed his college degree. Defendant stated that he was "being punished," while plaintiff had many problems including drug and alcohol problems and issues with CPS, yet he was being denied his right to have a relationship with his child.

Defendant also disagreed that he was terminated from the YWCA program, stating "[n]o, I didn't get bounced because . . . what happened was when . . . when that $1,000 grant ran out, and I had to pay $50.00 . . . and if you read that the report . . . you will see that they even said, we can continue to provide service for this family." Defendant also took issue with the other substantive parts of the report that indicated his weaknesses or violations of the rules and his obstinate behavior. Defendant stated,

> I'm the legal father. You know, I love my daughter, I have a great relationship with her. I don't have any felonies at all. But [plaintiff] has four daughters from four different men. The other three men all have felonies. They get to see the child. She has a felony now, she gets to do whatever she wants to do and she has - - she gets full reign. I want to see my daughter. And I - - and I requested for four to six hours once a week to start with unsupervised and then just let it go from there. I want to take my daughter to dinner.

The court denied defendant's motion, explaining as follows:

*Trial Court.* And with all due respect I'm going to deny your motion.

* * *

*Defendant.* So then set it up. Then what do you want me to - - what do you want me do- -

*Trial Court.* Sir - -

*Defendant.* - - supervised parenting time? I went everywhere- -

*Trial Court.* We've given you two agencies and both of them said that you screwed it up.

*Defendant.* Okay.

*Trial Court.* Go and find another agency- -

*Defendant.* There is no agency - -

*Trial Court.* - - that might be willing to - -- well

*Defendant.* - - there is no more agency . . .

*Trial Court.* Not my problem. Make a proposal to me for some other kind of supervised who can turn in reports.

*Defendant.* Okay, then - - then I'll - - then- -

*Trial Court.* I'm denying your motion. Thank you.

*Defendant.* Then - - okay, well then what do you want me to do because I want to see my daughter. Do you want it supervised? Then who - - who do you want it [sic] supervise it?

* * *

*Trial Court.* I have ruled that the Court has already made it clear to you what you need to do to have the Court's . . . extend your parenting time.

*Defendant.* There is no place to - - there is no place to have somebody to babysit me and my daughter.

*Trial Court.* And you have utterly failed. The motion is denied. Thank you.

*Defendant.* So how - - how am I supposed to see my daughter? It's the same as last time- -

*Trial Court*. Go to the Court of Appeals, Mr. Strickland.

On May 7, 2015, defendant filed a claim of appeal in this Court, but this Court dismissed defendant's appeal for lack of jurisdiction because the circuit court's order was not a "final order" for purposes of MCR 7.203(A)(1). This Court directed defendant to file a delayed application for leave to appeal. *DeBoer v Strickland II*, unpublished order of the Court of Appeals, entered May 20, 2015 (Docket No. 327269).

Thereafter, on June 11, 2015, defendant filed a delayed application for leave to appeal the trial court's April 24, 2015 order. This Court denied the application. *De Boer v Strickland III*, unpublished order of the Court of Appeals, entered September 30, 2015 (Docket No. 327867), lv den *DeBoer v Strickland*, ___ Mich ___; 872 NW2d 482 (2015).

Meanwhile, on September 18, 2015, defendant moved for joint legal custody and court-ordered parenting time. The critical thrust of defendant's argument was that he had not been able to see his child since 2012 because the circuit court refused to permit unsupervised parenting time and because the court would not assist defendant in arranging supervised parenting time. Defendant also reasserted numerous grievances that he had with the legal system and the perceived injustices that had been levied against him.

The case was referred to a FOC referee for a hearing[2] after which the referee recommended denying defendant's motion. After reviewing a video recording of the referee hearing, the circuit court adopted the referee's recommendation and denied defendant's motion on September 25, 2015. Defendant objected to the referee's recommendation, and the trial court denied the objection in an October 6, 2015, opinion and order, explaining as follows:

> There is a lengthy history in this case. As a summary, in January 2011, the defendant was granted unsupervised parenting time, and was ordered to undergo a psychological evaluation. The evaluation did not diagnose a mental illness, but did find that defendant was abrasive, narcissistic, and resisted answering questions about substance abuse. On May 29, 2011, upon failing to return the child at the end of his parenting time, the Grand Rapids police had to intervene and the defendant refused to open the door.
>
> Over the next several years, the defendant was discharged unsuccessfully from both of the Kent County supervised parenting time agencies. Despite the Court suggesting to the defendant that he should propose a supervised parenting time alternative, he instead periodically moves for parenting time without offering anything new.
>
> The same is true here. Before the Referee, and in his written objection, his position is that the undersigned is ignorant, evil, and biased. While he is entitled to his opinion, he simply repeats himself and fails to present any plan that would

---

[2] The hearing transcript is not included in the lower court record.

allow the Court to give him another chance at successfully completing supervised parenting time so that the Court can move to an expansion of parenting time.

Defendant appeals the October 6, 2015, order by right.

## II. ANALYSIS

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005). "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). In child custody cases, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Clear legal error occurs "when the trial court errs in its choice, interpretation, or application of the existing law." *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006).

At the outset we note that we have jurisdiction to address defendant's appeal of right. Pursuant to MCR 7.203(A), this Court has jurisdiction over an appeal of right from a "final judgment" or "final order" of the circuit court. MCR 7.202(6) defines a "final judgment" or a "final order" in relevant part to include "a post-judgment order affecting the custody of a minor." The term "'[c]hild-custody determination' means a judgment, decree, or other court order providing for legal custody, physical custody, *or parenting time* with respect to a child. Child-custody determination includes a permanent, temporary, initial, and modification order . . . .'" *Shade*, 291 Mich App at 22, quoting MCL 722.1102(c) (emphasis added in *Shade*). Here, the circuit court's October 6, 2015, order affected the custody of AS in that it denied defendant the right to parenting time. Therefore, it was a "final order" for purposes of MCR 7.202(6).

On appeal, defendant argues that the court erred in reading the psychiatric evaluation, imposed cruel and unusual punishment in violation of the Eighth Amendment, erred in reading the reports from Journies and the YWCA, and violated defendant's due process rights when it failed to hold a fitness hearing and where there was no evidence that defendant would harm AS. The underlying theme to all of these arguments is that the circuit court erred in denying defendant parenting time and that the denial violated the Child Custody Act and defendant's constitutional rights. Therefore, we proceed with an analysis of the law governing requests to modify parenting time.

"The term '[c]hild-custody determination' means a judgment, decree, or other court order providing for legal custody, physical custody, *or parenting time* with respect to a child. Child-custody determination includes a permanent, temporary, initial, and modification order. . . ." *Shade*, 291 Mich App at 22, quoting MCL 722.1102(c). A court may not modify a parenting time order without conducting a threshold inquiry to determine if there has been a "change of circumstances" or "proper cause shown." *Terry v Affum (On Remand)*, 237 Mich App 522, 534-535; 603 NW2d 788 (1999).

"The framework for evaluating 'proper cause' or 'change of circumstances' when a party requests to modify a parenting time order depends on whether an established custodial environment is affected and the type of modification requested." 1 Kelly, Curtis & Roane, Michigan Family Law (7th ed.) (ICLE, 2011), § 12.33, p. 679. "If a change in parenting time results in a change in the established custodial environment, then the . . . framework [set forth in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003)] is appropriate." *Shade*, 291 Mich App at 27. However, if the proposed modification does not change the established custodial environment, but merely alters the duration or frequency of parenting time, then the framework set forth in *Shade*, 291 Mich App at 28-30 governs and the court should apply "a more expansive definition of 'proper cause' or 'change in circumstances' . . . for determinations regarding parenting time." *Id*. at 28. In particular, the *Shade* framework considers "the type of normal life changes that occur during a child's life and that do not warrant a change in the child's custodial environment." *Id*. at 29.

In the event that a court determines that changed circumstances or proper cause warrants modification of a parenting time order, the focus of any new parenting time order must always be "to foster a strong relationship between the child and the child's parents." *Shade*, 291 Mich App at 29. Therefore,

Parenting time shall be granted in accordance with the best interests of the child. *It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents.* Except as otherwise provided in this section, *parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.* [MCL 722.27a(1) (emphasis added).]

To ensure that parenting time orders foster a strong parent-child relationship, our Legislature has provided the following list of non-exhaustive factors that a court should consider when entering or modifying a parenting time order:

(a) The existence of any special circumstances or needs of the child.

(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise reasonable parenting time.

-9-

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors. [MCL 722.27a(6).]

Turning to the case at hand, the circuit court did not articulate how the October 6, 2015, order is in AS' best interests or how the order facilitates a strong relationship between AS and defendant.[3] While the record may have supported denying defendant unsupervised parenting time, by rejecting defendant's request for assistance in reinitiating supervised parenting time, neither defendant nor AS have the opportunity to have a parent-child relationship. Instead, the court denied defendant parenting time and the denial was based on the circuit court's erroneous factual finding that defendant was "discharged unsuccessfully," from Journies and the YWCA. As discussed above, Journies and the YWCA both completed reports that, while they support that defendant certainly needed to make improvement, they do not support that defendant was "discharged unsuccessfully." Journies' report indicated that defendant made positive progress with AS and the sessions ended when Journies could not make contact with plaintiff to arrange evening sessions. Journies indicated that it could continue to provide services to defendant and AS. Similarly, with respect to the YWCA report, although the report indicated that defendant certainly had challenges to overcome and that he needed to improve his attitude toward YWCA staff, the YWCA indicated that it could continue to provide services to defendant and AS.

In short, the circuit court's order did not comply with MCL 722.27a in that the circuit court did not articulate how the present parenting time arrangement—i.e. that defendant and AS do not have any parenting time together—is in AS' best interests or how this arrangement "foster[s] a strong relationship" between AS and defendant. *Shade*, 291 Mich App at 29. Furthermore, the circuit court did not examine or apply any of the best interest factors set forth in MCL 722.27a(6) in determining whether to award any parenting time. On remand, the circuit court should consider the relevant best interest factors above and articulate a parenting time

---

[3] We note that, while a court may place reasonable restrictions on a parenting time order, MCL 722.27a(8), here, the court instructed defendant to locate an agency to supervise parenting time when defendant clearly needed assistance in this regard. Although it appeared at the last motion hearing that defendant would abide by the court's instructions regarding supervised parenting time, defendant indicated that he needed assistance locating an agency and arranging the parenting-time visits. To the extent that the court's assistance in locating an agency would be in AS' best interests and would serve to promote a healthy parent-child relationship, then the court should not hesitate to utilize the resources it has at hand including the FOC to facilitate reunification and supervised parenting time.

arrangement that is in AS' best interests with the primary focus being facilitation of a strong bond between defendant and AS.[4]

Vacated and remanded for further proceedings consistent with this opinion. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

---

[4] Given our conclusion that the circuit court's order did not comply with the CCA, we need not address defendant's arguments that the circuit court's order violated the Due Process Clause and the Eighth Amendment. Moreover, defendant failed to develop these arguments or support them with adequate legal authority. See e.g. *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008) ("appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority.") Furthermore, a circuit court has the authority to place reasonable restrictions on parenting time in the event that the court finds that such restrictions are in the child's best interests. See MCL 722.27a(8).