*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SETH CARTER,

        Plaintiff-Appellee,

v

SAFIYAH BASIR,

        Defendant-Appellant.

UNPUBLISHED
October 16, 2025
1:57 PM

No. 374263
Washtenaw Circuit Court
LC No. 18-001348-DP

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

This child custody case returns to this Court after remand for a determination of proper cause or change in circumstances and a renewed analysis of the best-interest factors in MCL 722.23.[1] Following an evidentiary hearing, the trial court awarded plaintiff-father and defendant-mother joint legal and physical custody and equal parenting time. Mother now appeals, contending that the trial court erred by awarding joint legal custody and that its best-interest findings were against the great weight of the evidence. Finding no error, we affirm.

## I. BACKGROUND

Since the birth of the parties' twins, the parents have engaged in prolonged disputes over custody, parenting time, and child support. A consent order entered in October 2019 granted the parties joint legal custody, awarded mother sole physical custody, and provided father with parenting time. Mother has since filed numerous motions to modify custody and suspend father's parenting time, alleging abuse and neglect, while father has filed multiple parenting-time-denial complaints with the Friend of the Court.

In May 2023, mother filed ex parte motions to modify custody and parenting time, again alleging abuse by father. After an evidentiary hearing, the trial court entered an order modifying

---

[1] *Carter v Basir*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 368751).

custody and parenting-time frequency by granting joint physical custody and equal parenting time. Mother appealed, and a panel of this Court held that the trial court erred by failing to make a proper-cause-or-change-in-circumstances finding regarding father's request for equal parenting time. This Court vacated the order and remanded for further proceedings. *Carter v Basir*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 368751), p 5.

On remand, the trial court conducted a multi-day evidentiary hearing at which Children's Protective Services (CPS) investigators, the children's therapists, and school officials testified. After considering the evidence presented and evaluating the best-interest factors, the court concluded that maintaining joint legal custody, granting the parties joint physical custody, and increasing father's parenting time was in the children's best interests. This appeal followed.

## II. DISCUSSION

"In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Kuebler v Kuebler*, 346 Mich App 633, 652-653; 13 NW3d 339 (2023) (citation omitted). This Court applies three standards of review in custody cases:

> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 3 (citation omitted).]

## A. JOINT LEGAL CUSTODY

The Child Custody Act, MCL 722.21 *et seq.*, governs the resolution of most custody disputes in Michigan. See *Kuebler*, 346 Mich App at 667. One of the Act's purposes is to "promote the best interests of the child," *id.* at 668 (citation omitted), and courts must construe it liberally to serve that purpose, MCL 722.26(1).

Joint legal custody requires that parents "share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). That means parents must "agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making." *Kuebler*, 346 Mich App at 691-692 (citation omitted). The inquiry is not whether the parents get along generally, but whether they can cooperate on important issues affecting the children's welfare. *Shulick v Richards*, 273 Mich App 320, 326-327; 729 NW2d 533 (2006). When joint custodians cannot agree on an important issue, the court resolves

the dispute based on the children's best interests. See *Lombardo v Lombardo*, 202 Mich App 151, 159-160; 507 NW2d 788 (1993).

In this case, a 2019 consent order awarded the parties joint legal custody. Following the evidentiary hearing, the trial court declined to modify that arrangement. Mother contends that was error, citing the parties' consensus that they could not effectively coparent. We disagree.

The record shows that while the parties struggled to communicate and lacked trust, the only dispute implicating "basic issues in child rearing," *Kuebler*, 346 Mich App at 691 (citation omitted), concerned the selection of the children's therapist. The parties agreed that the children needed therapy, but father alleged that mother "weaponized" the process by engaging therapists without consulting him, withholding his contact information, and biasing providers against him with unsubstantiated abuse allegations. The trial court intervened by ordering both parents to exchange the names of two licensed therapists and for father to select one. Both parties complied, and father arranged a therapy schedule that allowed the parties to alternate taking the children to their sessions. The children participated in multiple therapy sessions before the completion of the evidentiary hearing.

Although the record demonstrates animosity and poor communication, personal discord is not alone a barrier to joint legal custody. See *Shulick*, 273 Mich App at 326-327. There is no evidence of disputes over school enrollment, medical treatment, dietary requirements, or religious upbringing. And the sole legal-custody dispute—the therapist selection—was successfully resolved with court involvement. The record therefore does not support mother's contention that the parties cannot coparent. Rather, it shows that, despite their hostility, they generally managed to cooperate on important issues affecting the children's welfare. Accordingly, mother has not established that the trial court erred in its decision to maintain joint custody.

## B. BEST-INTEREST ANALYSIS

Under MCL 722.23, a trial court considering a child's best interests must consider the "sum total" of the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23(a)-(l).]

Here, the trial court found that Factors (g), (j), and (l) favored father; Factor (k) favored neither parent; and the remaining factors favored both parties equally. Mother challenges the findings concerning Factors (b), (c), (h), (j), (k), and (l). We address them in turn.

1. MCL 722.23(b) AND (c)

The court's findings on Factors (b) and (c) were supported by testimony from both parents. Each testified that they engaged in routines to support the children's religious and educational development. Father, though Christian, testified that he respected the children's Islamic faith, encouraged their religious practices, and abided by their religious dietary restrictions. He also testified that he accommodated mother's decision to raise the children vegan, though he expressed concerns about the diet's nutritional adequacy. Both parents testified that they took the children to medical appointments as necessary. Father acknowledged that his income was less consistent than mother's but testified that he could provide for the children's needs.

Mother contends that father violated dietary restrictions and lacked financial security. The trial court rejected those claims, crediting father's testimony. Although mother speculated that father fed the children non-halal or non-vegan food, she presented no corroborating evidence. The trial court also credited father's testimony that his income was sufficient to meet the children's needs. We defer to those credibility determinations. *Demski v Petlick*, 309 Mich App 404, 453; 873 NW2d 596 (2015).

Mother also asserts that father interfered with the children's counseling by rejecting therapists "simply because they had spoken to [mother] rather than him and testified against him." The record does not support that claim. The children's first therapist testified that she referred the children to another provider because of the case's complexity. Father testified that he objected to

-4-

two subsequent therapists because mother engaged them unilaterally without his input. The trial court reasonably interpreted father's objections as efforts to exercise joint legal custody, not interference.

Regarding the therapist father chose pursuant to the trial court's order, mother claims father canceled the first session because she had "spoke[n] to the [therapist] first." But by mother's own testimony, father canceled because she insisted on attending and participating in a session scheduled during his parenting time. Father testified that he later scheduled sessions so each parent could participate during his or her own parenting time. On this record, mother has not shown that father interfered with therapy in such a way as to render the trial court's findings on Factors (b) and (c) against the great weight of the evidence.

Finally, mother argues that, although CPS never substantiated abuse, the trial court should have weighed against father reports that he disciplined the children with a belt. Discipline methods may be relevant under Factor (b). See *Fletcher v Fletcher*, 229 Mich App 19, 26; 581 NW2d 11 (1998). Here, however, the children gave inconsistent accounts. They told a therapist that father used a belt but told a CPS investigator that he disciplined them by making them write or sit in their room. To another investigator, they reported "whooping" but also disclosed that mother instructed them to say negative things about father. Both CPS investigators and the children's pediatrician testified that they observed no marks indicative of abuse. In light of that testimony, the trial court found no substantiated evidence that father disciplined the children with a belt. Because the evidence does not clearly preponderate in the opposite direction, that finding was not against the great weight of the evidence.

## 2. MCL 722.23(h)

Concerning Factor (h), the trial court observed that the children were "at a very early stage of their academic careers and during the prior school year had some difficulty adjusting to kindergarten." The court noted mother's concern that father caused the children's misbehavior at school, but it also considered testimony from their teacher and assistant principal that the children were "learning how to sit and behave," their behavior improved by the end of the school year, and they "did not stand out" compared with peers. The court therefore found that Factor (h) favored the parties equally.

The record supports that finding. The children's kindergarten teacher described them as generally well-behaved, with some early issues that improved over time. Each child had three unexcused tardies, but the teacher could not attribute them to a specific parent. The teacher recalled an incident in which the children were written up after one of them "choked" the other, but she characterized it as "play-fighting" without injury. The assistant principal testified that the children had occasional disciplinary issues, such as profanity, but nothing unusual for their age.

On appeal, mother contends that the trial court's findings on Factor (h) were against the great weight of the evidence. She asserts that the children's misbehavior in school often involved physical assaults and choking, that such misbehavior occurred "primarily" during father's parenting time, and that the children's pediatrician warned that their behavior could escalate. Those arguments are unpersuasive. As an initial matter, mother testified that one child was disciplined for choking another student at school, but none of the school officials recalled such an

-5-

incident, and she presented no corroborating evidence. The children's teacher characterized the choking incident between the twins for which discipline was imposed as "play-fighting," not a serious physical altercation.

Additionally, although mother claimed that the misbehavior occurred "primarily" during father's parenting time, she provided no evidence linking the behavior to him. School officials testified that the children's conduct was typical of kindergarteners who were learning how to behave in a classroom setting. And while the children's pediatrician expressed a general concern that unaddressed behavioral issues in young children can escalate, the record shows that the issues were addressed by school staff and by both parents, and the children's behavior improved over the school year. On this record, the trial court's findings as to Factor (h) were not against the great weight of the evidence.

### 3. MCL 722.23(j), (k), AND (*l*)

Mother next challenges the trial court's findings on Factors (j), (k), and (*l*), arguing that the court improperly penalized her because she "reasonably believed the children's repeated reports of physical discipline and abuse."[2]

As to Factor (j), the court found that mother "has a long history of marginalizing and minimizing Father and has neither facilitated nor encouraged a close and continuing parent-child relationship between the boys and their father." It noted that mother repeatedly withheld father's parenting time without justification, resulting in awards of make-up time.

Regarding Factor (k), the court found no evidence substantiating physical abuse, aside from one incident in which father's dog nipped one of the children. The court noted, however, that father took appropriate remedial action by promptly having the dog euthanized.

As to Factor (*l*), the court found that mother weaponized the children's therapy against father "by engaging therapists without his input, consent, or knowledge, not providing the therapist his contact information[,] and prejudicing the therapist against him by making false[,] unsubstantiated allegations that he has no opportunity to correct or counter."

Under MCL 722.23(j), a trial court may not weigh against a parent "any reasonable action taken . . . to protect a child or that parent from sexual assault or domestic violence by the child's other parent." The trial court did not violate that prohibition. It expressly found that there was no evidence to substantiate that father abused the children and that mother's repeated denials of father's parenting time were unjustified. The record is replete with examples of mother's attempts

---

[2] Mother raises the same claim with respect to the parenting-time factors in MCL 722.27a(7)(c) (reasonable likelihood of abuse or neglect of child during parenting time), (f) (whether parent can reasonably be expected to exercise parenting time according to the trial court's order), and (h) (threatened or actual detention of the child). For the reasons discussed in our analysis of the best-interest factors, this claim likewise lacks merit.

to restrict or control father's parenting time and interfere with his ability to coparent, often for reasons unrelated to the alleged abuse.

In short, the trial court did not penalize mother for taking reasonable actions taken to protect the children from domestic violence by father. Rather, it found her actions unreasonable because there was no evidence that father abused the children. The findings on Factors (j), (k), and (*l*) are therefore not against the great weight of the evidence.

## III. CONCLUSION

The trial court did not err in maintaining the parties' joint legal custody, and its best-interest findings were not against the great weight of the evidence. We therefore affirm.[3]

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock

---

[3] Because we reject mother's contention that a remand is necessary, we decline to address her request that we remand to a different trial court judge.