*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDSEY WHITELOCK,

　　　　　Plaintiff-Appellee,

v

ROY FOWLER,

　　　　　Defendant-Appellant.

UNPUBLISHED
September 15, 2022

No. 360248
Ionia Circuit Court
LC No. 2017-032914-DS

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this dispute regarding legal custody and parenting time, defendant, Roy Fowler, appeals of right the trial court order issued after a de novo hearing that granted plaintiff, Lindsey Whitelock, sole legal custody of the parties' minor child on all issues related to RJF's medical care. The order also set specific conditions for defendant's exercise of parenting time. For the reasons explained herein, we affirm in part and reverse in part.

## I. RELEVANT FACTS AND PROCEEDINGS

The parties are the parents of RJF, a minor child who suffers from a number of serious and potentially life-threatening medical issues, including hypogammaglobulinemia, a condition that causes RJF to be highly susceptible to infections and requires monthly infusions to support his immune system. RJF contracted COVID-19 in February 2021 and spent 15 days in Helen DeVos Children's Hospital, part of that time on a ventilator. According to plaintiff, RJF's treating physicians believed that he needed an experimental treatment. After doctors obtained approval from the Food and Drug Administration for the treatment, plaintiff telephoned defendant to get his signature on necessary consent forms. According to plaintiff, defendant agreed to the treatment, but he declined to come immediately to the hospital to sign the necessary forms, stating that he did not want to return to Grand Rapids and would sign the forms the following day. RJF's maternal grandmother was present with plaintiff during her telephone call with defendant and she testified similarly. Defendant disputed their testimony. He said that he asked plaintiff whether signing the forms could wait until the following day. When she said that it could not, he told her that he would be there and he began to prepare to go to the hospital. However, 15 or 20 minutes after the first

-1-

phone call, plaintiff called again and said, "Never mind. I got them to do it without you." The physician administered the treatment on an emergency basis, without defendant's signature. RJF recovered and the hospital discharged him.

In July 2021, defendant moved for an order to show cause why plaintiff should not be held in civil contempt for imposing conditions that prevented him from exercising parenting time. Plaintiff responded with a motion to modify parenting time. Relative to the instant appeal, she identified RJF's various medical conditions and alleged that COVID-19 endangered him because of his suppressed immune system. She recounted RJF's bout with COVID-19, that he had been a candidate for an experimental treatment "to save his life," and that defendant would not immediately come to the hospital to sign the paperwork necessary to allow the treatment. She further alleged that despite RJF's condition and the extra risks posed by COVID-19, defendant and his wife had refused to be vaccinated. Plaintiff argued for modification of defendant's parenting time because of defendant's alleged lack of interest in RJF, lack of involvement in RJF's medical care, and "callous disregard" for RJF's safety, health, and well-being.

The parties appeared before a Friend of the Court (FOC) referee for a hearing on both motions. Plaintiff testified extensively about RJF's medical condition, the inability of his body to make or retain antibodies, and the various treatments and therapies that he received. Relevant to the instant appeal, plaintiff recounted RJF's bout with COVID-19 and her attempt to get defendant to come to the hospital to sign the consent forms for the experimental treatment. She explained that RJF could get COVID-19 again, with very serious consequences. She referred to a letter "in the file" from one of RJF's doctors allegedly stating that everyone should get the COVID-19 vaccination, and she submitted a number of newspaper articles and reports, all purportedly written by "professionals in this area of immunodeficiency and COVID-19 vaccines," who presented the position that the COVID-19 vaccine benefited the person being vaccinated as well as people in contact with the vaccinated person.

Plaintiff acknowledged that even if everyone around RJF was vaccinated, there was no guarantee that he would not contract COVID-19 again, but she insisted that his risk of contracting the illness would be greatly decreased. Plaintiff testified that defendant and his wife seemed to be opposed to the vaccine and she expressed concern that defendant did not take seriously the potential health risks to RJF or consider the role of vaccination in minimizing those risks. Accordingly, plaintiff asked the trial court to condition parenting time on everyone in defendant's household being fully vaccinated, prohibit defendant from taking RJF to public places, and grant her sole legal custody of RJF.

Appearing *in propria persona*, defendant testified that he basically left all the medical decisions to plaintiff, that she kept him reasonably informed of RJF's care, and that he was unaware of any changes in RJF's underlying conditions. He indicated that he was not always able to access providers' information about RJF's medical condition, and he maintained that he should at least have some input in the decision-making process surrounding RJF's medical care. Defendant testified that he tried to participate in RJF's care, but that appointments were scheduled at times when he had to work. Defendant acknowledged that he and his wife had been hesitant to get the COVID-19 vaccination before it received FDA approval, but now that it had been approved, they were going to get vaccinated and would provide plaintiff with proof of their vaccination status.

The referee concluded that the evidence was insufficient to meet the threshold showing for a change in legal custody. Specifically, the referee observed that "[t]he parties generally cooperate and reach agreement on important issues affecting the child's welfare, by plaintiff making the decisions, telling defendant about them, and defendant acquiescing to her decisions. [RJF] has not been negatively impacted by this way of making important parenting decisions." The referee concluded, however, that the evidence did meet the threshold for considering whether a modification of parenting time was warranted. After making the necessary findings regarding RJF's established custodial environment and plaintiff's burden of proof, and conducting a best-interest analysis, the referee found that the modification of parenting time served RJF's best interests. The referee recommended that defendant have parenting time in accordance with the parties' mutual agreement until he became fully vaccinated for COVID-19, and that he have at least weekly communication with RJF by telephone, Zoom, Facetime or other such means. The referee recommended a parenting-time schedule for after defendant became fully vaccinated that included parenting time on designated weekends and during the summertime. The referee's recommendation required defendant to take reasonable precautions regarding COVID-19 during his parenting time, and it stated that "[d]isagreement as to defining what reasonable precautions are is not a basis for plaintiff withholding [RJF] from defendant."

Plaintiff objected to the referee's recommendation against a change in legal custody and asked for the circuit court's de novo review. She argued that joint legal custody impeded seeking emergency medical treatment during RJF's hospitalization with COVID-19. She contended that the severity of RJF's maladies could cause his condition to "change on a dime," thereby requiring an immediate response. She asserted that there had been "significant numbers of situations, through the years, which could have had a very serious and detrimental impact on the minor child, due to the joint legal custody situation," and she maintained that, "under the circumstances, joint legal custody is a serious concern and should be eliminated." Plaintiff expressed that, before defendant could exercise parenting time, everyone in his home with whom RJF would regularly be exposed should be vaccinated against COVID-19, unless they were too young or medically exempt from the vaccine. Plaintiff believed this to be particularly necessary, given that defendant's wife worked in healthcare and, according to plaintiff, was "constantly exposed to situations involving the virus." Plaintiff also reasserted her desire to have sole legal custody of RJF and argued that the parties operated as if she had sole legal custody and that she would like to call their arrangement what it was and remove the "technical obligation" to have defendant's "approval on things he doesn't want to have approval of." Plaintiff asserted that the testimony at the FOC hearing surrounding RJF's experimental treatment for COVID-19 showed that there had been a significant change of circumstances.

The trial court held a hearing at which plaintiff reiterated her arguments. Defendant, represented by counsel, argued that the trial court could not order him or anyone in his household to be vaccinated and could not mandate that RJF wear a mask. Counsel, however, reported that defendant was vaccinated (his wife was not), but that plaintiff still refused to allow him parenting time. Defendant pointed out that no medical testimony had been presented at the FOC hearing, and he objected to the newspaper articles and reports entered into evidence, contending that an antivaccine article existed for every pro-vaccine article. Defendant asked the trial court to continue joint legal custody, to not mandate vaccinations or masks, and to hold plaintiff in contempt for refusing to allow him to exercise his parenting time.

The trial court agreed that it lacked the authority to order anyone to be vaccinated and stated that vaccination was an "independent and personal choice" that the court had to respect. The court explained, however, that it focused on RJF who was under the court's jurisdiction and for whom the court could enter orders that were in the child's best interests. The court found it "particularly troubling" that, when told that RJF needed immediate emergency treatment for COVID-19, defendant stated that he would not drive back to Grand Rapids to give his permission for the treatment. The court questioned the credibility of defendant's testimony at the FOC hearing that, had he known the extent of RJF's illness and that he might die, nothing could have kept him from the hospital. The court opined that a lay person reading the testimony about RJF's medical condition and his reaction to COVID-19 might have concluded that RJF was "on his deathbed." Finding plaintiff's argument convincing that defendant could not make informed medical decisions if he was not "in the loop" with respect to RJF's medical needs, the trial court concluded that modification of the custody order was necessary for RJF to get immediate medical care when he needed it. The trial court found that RJF "was on his deathbed and that defendant did not bend over backwards" to ensure that RJF's medical needs were met and that there had been a change in circumstances that warranted revisiting the issue of legal custody. The trial court found that RJF had an established custodial environment with plaintiff, and, after conducting a best-interest analysis, the court concluded that clear and convincing evidence established that granting plaintiff "sole legal custody, as it relates to medical care" served RJF's best interests. The court affirmed the referee's recommendation regarding parenting time and stated that, because defendant had been vaccinated, he could exercise parenting time according to the referee's recommendation as long as he did not expose RJF to anyone of legal age not vaccinated which meant that if someone in his home was unvaccinated, defendant could choose to exercise parenting time elsewhere or suggest that the other residents go somewhere else during his in-home parenting time.

Defendant objected to the proposed order filed by plaintiff's attorney, arguing in part that it required him to submit proof of vaccination status to plaintiff and required persons in close proximity to RJF to be masked at all times, neither of which the trial court had discussed in its ruling from the bench. Plaintiff asked the trial court to clarify that, in order to effectuate the terms of its order, defendant, his wife, and anyone else present during parenting time must provide proof of vaccination and absent such proof they should not be in defendant's home during parenting time. After oral argument, the trial court issued a written order stating that: (1) plaintiff had sole legal custody of RJF on all issues related to his medical care; (2) defendant would have parenting time in accordance with the FOC referee's September 3, 2021 recommendation; (3) for defendant to exercise parenting time in his home, everyone lawfully permitted to be vaccinated against COVID-19 and its variants had to be vaccinated, unless they were medically exempt; (4) defendant had to provide plaintiff with verification that he and all those in regular contact with RJF were fully vaccinated, and (5) when defendant exercised parenting time elsewhere than in his home, he had to ensure that RJF and, to the extent possible, those in close proximity to RJF, were fully masked at all times. This appeal followed.

## II. STANDARDS OF REVIEW

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue" MCL 722.28. A trial court's finding is against the great

-4-

weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher*, 447 Mich at 881.

## III. ANALYSIS

### A. MODIFICATION OF LEGAL CUSTODY

Defendant first argues that the trial court erred by finding a change in circumstances warranting reopening the custody decision and by apportioning legal custody when it granted plaintiff sole legal custody over matters pertaining to RJF's medical care. We agree.

"This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). Once the trial court has entered an order or judgment in a child-custody action, the court may modify or amend that order or judgment "for proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). To establish proper cause to revisit a custody order, the person seeking modification must do the following:

> [P]rove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. [*Id*. at 512.]

"[T]o establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. Only if the movant establishes either proper cause or change in circumstances warranting reopening the custody issue may a trial court proceed to determining the child's established custodial environment and reevaluating the statutory best-interest factors. *Id*. at 512.

Plaintiff contends that RJF's general medical condition requires concerted action and attention, and that defendant is unwilling or unable to provide that jointly with plaintiff. She also argues that joint legal custody is an impediment to obtaining emergency care. The trial court seemed primarily concerned with RJF being able to get immediate medical care when necessary.

Plaintiff has cited no authority for the proposition that one parent's reliance on the other parent's capability and knowledge of an important issue affecting their child's welfare establishes a proper cause or change in circumstances that warrants revising legal custody. Joint legal custody means that the parents "share decision-making authority as to the important decisions affecting the welfare of the child," MCL 722.26a(7), and contemplates that the parents will "cooperate and generally agree," MCL 722.26a(1). However, no authority has mandated what the process of cooperating and reaching agreement should involve or defined each parent's responsibility in the process. It might be ideal if each parent was thoroughly informed and able to contribute equally and dispassionately to the decision-making process, but that is not what the statute requires. The statute contemplates only that the parties will "cooperate and generally agree." The referee observed that the parties' method of cooperating and reaching agreement involved plaintiff making the decisions and informing defendant about them, and defendant acquiesced to her decisions. The referee concluded that RJF had not been affected negatively by this decision-making process. Accordingly, the fact that plaintiff is well informed about RJF's medical needs and much more involved in his medical care does not establish a proper cause or change in circumstances.

Both the trial court and plaintiff were concerned about the effect that joint legal custody might have on obtaining emergency medical care for RJF. Both the trial court and plaintiff saw this danger exemplified in defendant's response to plaintiff's request that he immediately come to the hospital to sign the necessary forms to allow doctors to go forward with their experimental treatment of RJF during his treatment for COVID-19. Plaintiff asserted that joint legal custody impeded emergency medical treatment for RJF during his hospitalization with COVID-19. The record, however, reflects that joint legal custody did not delay RJF's treatment because doctors made the medical decision to treat him on an emergent basis. Plaintiff contended without evidentiary support that there had been numerous situations that might have had a very serious and detrimental impact on RJF because of joint legal custody. Such speculation and unsupported claims, however, cannot suffice to establish a proper cause or change of circumstances.

No record evidence establishes a change in RJF's underlying medical condition or his susceptibility to infections, and RJF's doctors could not say whether RJF's bout with COVID-19 left RJF more susceptible to the coronavirus in the future. Likewise, no record evidence establishes an actual change in defendant's level of involvement in RJF's medical treatment. Plaintiff testified at the FOC hearing that defendant had not been involved in RJF's medical treatment since the parties separated, sometime before December 2017. This is not to ignore plaintiff's concern that a situation might arise that requires immediate attention and consent for medical care and one party might be unreachable or unable to provide immediate consent. The remedy, however, is not to apportion all medical decisions to plaintiff. See *Shulick v Richards*, 273 Mich App 320, 328; 729 NW2d 533 (2006) (stating that the Legislature did not intend for joint custody to mean that important decisions about a child's welfare were apportioned). A more appropriate remedy would be to tailor the custody order in a way that ensured that RJF could get immediate medical care in the event of an emergency.

For the foregoing reasons, we find the factual underpinnings of the trial court's conclusions were against the great weight of the evidence. The trial court's analysis of plaintiff's request for modification of legal custody should not have proceeded to a determination of the established custodial environment and a best-interest analysis. Moreover, even if plaintiff had met her burden to establish a proper cause or a change in circumstances, the court committed clear legal error by

apportioning legal custody and ordering that plaintiff had sole decision-making authority over issues concerning the entirety of RJF's medical care. Accordingly, we reverse that portion of the trial court's order granting plaintiff sole legal custody on all issues related to RJF's medical care.[1]

## B. PARENTING-TIME CONDITIONS

Defendant next asserts that the trial court erred by imposing certain conditions on his exercise of parenting time. Given the unique circumstances of this case, we disagree.

Michigan presumes that it is "in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1). Further, "[a] child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). To that end, a trial court must grant parenting time to a parent "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1). Nevertheless, "[a] parenting-time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent . . . ." MCL 722.27a(9). These may include "restrictions on the presence of third parties during parenting time," MCL 722.27a(9)(c), or "[a]ny other reasonable condition determined to be appropriate in the particular case," MCL 722.27a(9)(i).

The trial court's order conditions defendant's exercise of parenting time on whether he does so at his home or away from his home. The order prohibits defendant from exercising parenting time at his home around vaccine-eligible people who have elected not to be vaccinated. Notably, the order does not require anyone to be vaccinated, and the only person required to wear a mask is RJF, although defendant is ordered to ensure, "to the extent possible," that those in close proximity to RJF are also masked.

In *Berger,* our court has discussed what our review of a trial court's conclusions must find before we reverse a trial court's decision regarding the conditions imposed on the exercise of parenting time as "so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger*, 277 Mich App at 705. We do not conclude on the record before us that the trial court's decision regarding parenting time warrants reversal.

In this case, the trial court sought to create an environment for defendant's exercise of parenting time that served RJF's best interests in light of the record of RJF's vulnerable medical condition. As the trial court's handwritten additions to plaintiff's proposed order show, the trial court modified the order so that defendant had to provide proof of vaccination status only for those "regularly present" during parenting time, not for everyone present. And, if plaintiff did not receive proof of vaccination status for those regularly present, she would be excused from allowing parenting time with those regularly present for whom she did not have proof of vaccination. The order does not require defendant to provide proof of vaccination status for everyone who has

---

[1] In light of our disposition of this issue, we need not consider defendant's argument that the trial court erred by finding a change in circumstances in the absence of expert medical evidence.

contact with RJF during parenting time, nor does it allow plaintiff to deny defendant parenting time under any circumstance; the only people from whom plaintiff can withhold RJF are those regularly present in defendant's home who could be vaccinated against the coronavirus but chose to be unvaccinated. The record indicates that the trial court tailored its order in this regard to enable defendant to continue having parenting time while minimizing the risks to RJF's health and well-being.

Although plaintiff did not present any evidence substantiating her claims about RJF's medical conditions, defendant did not dispute her testimony that RJF has a rare medical condition that prevents him from producing or keeping antibodies, renders him particularly susceptible to infections, and requires routine infusions to help his immune system. Further, there is record evidence that RJF's condition is so rare and the coronavirus so novel that there are no clinically available tests capable of reliably predicting RJF's level of protection from reinfection. Regardless whether RJF's risk of being reinfected with COVID-19 would be decreased if everyone around him was vaccinated; vaccinated persons can contract and potentially transmit COVID-19. There may be reasonable alternatives to vaccination that might protect RJF equally well or better, but no one offered any alternatives. Moreover, defendant did not seriously challenge the efficacy of the vaccine under the circumstances here presented; he merely posited that for every pro-vaccine article an antivaccine article existed. Significantly, the trial court's order does not require anyone to be vaccinated and it provides the now-vaccinated defendant with reasonable options for the exercise of his parenting time. Given the unique nature of RJF's severe medical condition, and considering that the order does not require anyone to be vaccinated and does not allow plaintiff to deny the now-vaccinated defendant parenting time, we conclude that the trial court did not abuse its discretion in fashioning its ruling for the protection of RJF under the circumstances.

Therefore, we reverse that portion of the trial court's order granting plaintiff sole legal custody over all medical decisions related to RJF, and we affirm the trial court's conditions for defendant's exercise of parenting time.

Affirmed in part, reversed in part. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford