*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN PRICE,

        Plaintiff-Appellee,

v

RENEE CASSATA,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 364392
Wayne Circuit Court
Family Division
LC No. 22-105383-DC

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this custody dispute, defendant appeals as of right the trial court's order awarding the parties joint legal custody and defendant sole physical custody of their minor child, granting plaintiff overnight parenting time, and awarding defendant $478 in monthly child support. On appeal, defendant contends that the trial court erred by awarding the parties joint legal custody, awarding plaintiff unsupervised, overnight parenting time, and failing to award her child support retroactive to the child's birth in addition to compensation for healthcare, child care, and other expenses. We affirm.

## I. BACKGROUND

The parties are unmarried and share a minor child, AC, who was born prematurely in September 2018. Plaintiff signed an affidavit of parentage at the child's birth. Plaintiff has two other children with his ex-wife that he cares for half the time. Defendant has one other child with her ex-husband; the two have an informal arrangement for custody and parenting time that is not specified in the record.

The parties' relationship soured during defendant's pregnancy. Defendant evicted plaintiff from her home and they separated. After AC's birth, defendant allowed plaintiff limited parenting time under her supervision until June 2019. That month, after plaintiff sought to take AC to the zoo during his parenting time and against defendant's wishes, she stopped allowing plaintiff parenting time and told him not to contact her anymore. According to defendant, plaintiff's behavior made her fear he was going to take AC and never return. Thereafter, plaintiff engaged

-1-

in various actions that defendant interpreted as stalking and harassing, and, in 2021, plaintiff pleaded guilty to misdemeanor stalking.

In May 2022, plaintiff filed a complaint seeking joint legal and physical custody over AC, asserting that this was in the child's best interests. Plaintiff also requested that the issue of child support be referred for a Friend of the Court (FOC) recommendation and that support be ordered under Michigan's Child Support Guidelines. Defendant countered that plaintiff was unfit to be awarded legal and physical custody of AC, and that this was not in the child's best interests. Defendant requested that the court deny plaintiff's requests and order him to pay child support retroactive to AC's birth.

The parties agreed to mediate the dispute, and agreed at mediation for plaintiff to submit to a psychological evaluation. Plaintiff's counsel subsequently withdrew from the case, and plaintiff represented himself during the remaining proceedings. With mediation ultimately unsuccessful, the court held a custody trial over two days.

Following trial, the trial court entered an opinion and order granting defendant sole physical custody and both parties joint legal custody over AC. The court also awarded plaintiff weekly, overnight parenting time each Saturday through Sunday until March 1, 2023, with plaintiff's parenting time then increasing to follow the Wayne County Parenting Time Schedule. Lastly, the court awarded defendant $478 in monthly child support, effective as of June 1, 2022 (the first month after plaintiff filed his custody complaint), and with plaintiff receiving credit for any payments made directly to defendant since that date. The trial court concurrently entered a uniform child support order concerning the monthly support payments of $478. This $478 was the amount calculated as base support, with no additional amounts for ordinary medical, child care, or other expenses. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's order concerning child custody "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. "[A] reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Pierron*, 486 Mich at 85 (quotation marks and citation omitted; second alteration in original). Furthermore, in reviewing a trial court's findings, this Court should defer to any determinations of credibility made below. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

A trial court's discretionary rulings in a custody dispute are reviewed for a palpable abuse of discretion, see MCL 722.28, which occurs "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias," *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Questions of law in custody disputes "are reviewed for clear legal error." *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003) (quotation marks and citation omitted). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.*

III. ANALYSIS

A. CUSTODY

Defendant argues that the trial court erred by awarding plaintiff joint legal custody over AC. We disagree.

According to defendant, the court first erred by failing to provide any substantial factual findings or supporting analysis on the record to justify its decision. Specifically, the court only gave a cursory review to the applicable best-interest factors, and it said very little regarding legal custody. Indeed, the closest the trial court came to substantively discussing this issue was its cursory finding, devoid of any supportive reasoning, regarding best-interest factor (j). Critically, the court never mentioned whether the parties could effectively coparent and agree on important issues regarding the child, with the absence of this analysis constituting clear legal error.

Defendant also argues, notwithstanding the court's cursory, insufficient analysis, that the award of joint legal custody was against the great weight of the evidence. Specifically, Dr. Jack Haynes, who conducted plaintiff's psychological evaluation, testified extensively concerning plaintiff's personality deficits, which presented "obvious obstacles" precluding joint legal custody. From defendant's perspective, the court also had "clear examples of what co-parenting might look like between these two parties," most notably evinced by plaintiff's stalking behavior and subsequent failure to accept accountability for this conduct. And, according to defendant, it is clear that plaintiff will use his joint legal custody award to perpetuate improper contact with defendant, as shown by his self-serving arguments for a share of custody as well as his prior threatening and abusive conduct.[1]

Custody disputes are resolved by determining the best interests of the child. *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). The " 'best interests of the child' means the sum total of the following [12] factors to be considered, evaluated, and determined by the court:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

---

[1] In response, plaintiff argues that defendant's appeal should be dismissed because her brief failed to comply with MCR 7.212(C)(6). Although we have discretion to strike a nonconforming brief under MCR 7.212(I), and dismiss an appeal for an appellant's failure to pursue the case in conformity with the rules, MCR 7.216(A)(10), we decline to do so in this case. Even if defendant's extensive recitation of the facts is somewhat skewed, it nevertheless provides a detailed background of this case, and, in any event, our analysis is based on our independent review of the record below.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [*Id*. at 244-245, quoting MCL 722.23.]

If either parent requests joint custody, the trial court must consider it. See MCL 722.26a(1); see also *Shulick v Richards*, 273 Mich App 320, 326; 729 NW2d 533 (2006). The Legislature defined joint custody to mean an order that provides "[t]hat the child shall reside alternatively for specific periods with each parent," "that the parents shall share decision-making authority as to the important decisions affecting the welfare of the child," or both. See MCL 722.26a(7).

The court must determine whether joint custody is in the child's best interests by examining the best-interest factors stated under MCL 722.23, see MCL 722.26a(1)(a), and by determining "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child," MCL 722.26a(1)(b). See also *Bofysil*, 332 Mich App at 249. When "the record reflects a deep-seated animosity between the parties and an irreconcilable divergence in their opinions about how to foster [a] child's well-being," joint legal custody "[is] not an option[.]" *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008), citing MCL 722.26a(1)(b).

In justifying its custody determination, the trial court, after determining that AC had an established custodial environment with defendant, then evaluated AC's best interests. The court found that best-interest factors (a) (love, affection, and emotional ties between parties and child) and (b) (capacity and disposition to give child love, guidance, etc.) both weighed equally between the parties because there was "no question that both parents love their child greatly and have shown a willingness to provide the child with affection and guidance." The court also found factor (c) (parties' capacity and disposition to provide child food, clothing, etc.) to weigh equally between the parties because "[b]oth parties are gainfully employed and possess the ability to care for the minor child when [she is] in their care." Next, the court found that factors (d) (length of time child has lived in stable, satisfactory environment, and desirability of maintaining continuity) and (e) (permeance of existing or proposed custodial home(s)) both "slightly" favored defendant because AC had lived with defendant for much longer than plaintiff.

The court found factors (f) (parties' moral fitness) and (g) (parties' health) to both favor defendant, as well. The court reasoned as follows:

> Plaintiff [] has a history with the legal system with the most notable charge being stalking charges in 35th District Court where Defendant was the victim and he ultimately received a no-contact order, a GPS tether and one year probation. The Court does not find that Defendant has any legal red flags. In terms of physical health, both parties are found to be in adequate physical health. In terms of mental health, a fair amount of the testimony from both parties and Dr. Hayes [sic] revolved around Plaintiff's mental state due to the criminal charges, erratic behavior, civil court filings, etc[.] While the Court does find Plaintiff may need therapy and/or medication to deal with mental illness, the Court is not concerned that, in its present form, any mental illness the Plaintiff may have will severely impact his ability to parent the minor child. Still this factor must favor Defendant, who does not possess any mental illness, due to the totality of the circumstances.

The court did not consider factors (h) (child's home, community, and school record) or (i) (child's reasonable preference if of sufficient age) due to AC's age. The court found that factor (j) (parties' willingness and ability to facilitate and encourage a continuing relationship between the child and other parent(s)) favored both parties equally. It stated, "While both parties have their reservations about the other, the Court does not believe the parties will be unable to adequately co-parent the minor child." Lastly, the court found factor (k) (domestic violence) to favor defendant because plaintiff was charged with stalking her. While the court never explicitly mentioned factor (*l*) (any other factor considered relevant by the court), it noted giving "special consideration" to the psychological evaluation conducted by Dr. Haynes. The court ultimately reasoned that its joint legal custody determination was warranted "considering the child's established custodial environment[] and the best[-]interest factors[.]"

As an initial matter, while the court did not provide extensive findings and analysis concerning all the facts at issue, it explicitly evaluated each best-interest factor as required. And this Court has affirmed a custody award even when the trial court never explicitly stated on the record that the award was in the child's best interests. See *Powery v Wells*, 278 Mich App 526, 530; 752 NW2d 47 (2008) ("We acknowledge that the trial court failed to include a concise, explicit statement that modifying the custody order to grant [the] defendant weekly physical

custody during the school year was in the child's best interest[s]. Nonetheless, such a finding can easily and clearly be drawn from the trial court's written opinion."). Further, while the court never addressed the parties' ability to cooperate and generally agree regarding important decisions affecting the child's welfare with this particular language, it implicitly did so when finding under factor (j) that the parties could effectively coparent together.

Because the trial court properly addressed each best-interest factor, which included mention of the parties' ability to coparent together, and explicitly connected these findings to its custody determination, it did not commit clear legal error on a major issue. The question, therefore, is whether the court's findings were against the great weight of the evidence or the ultimate custody determination was otherwise an abuse of discretion. Our analysis is limited, however, to the specific points defendant argues on appeal, noting that she does not substantially address any individual best-interest factor and focuses instead on particular facts making joint legal custody generally unfeasible.

Despite defendant's emphasis on Dr. Haynes's testimony and plaintiff having personality deficits sufficient to preclude him from having joint legal custody, the trial court explicitly found that plaintiff's mental state did not severely impact his parenting ability, while nevertheless favoring defendant on the parties' mental health. The court noted that it took special account of Dr. Haynes's psychological report. And Dr. Haynes's report and testimony, while flagging some potential personality issues, never diagnosed plaintiff with any mental illness or personality disorder. Accordingly, the record adequately supports the trial court's finding that plaintiff's mental state was not a barrier, or at least not an insurmountable one, to joint legal custody in this case.

Regarding plaintiff's stalking and harassing behavior, the court explicitly mentioned plaintiff's stalking conviction as related to both moral fitness and domestic violence, and it favored defendant on both factors. Further, the parties disputed the circumstances surrounding the stalking conviction, as well as plaintiff's separate allegedly harassing behaviors. Notably, plaintiff maintained that his actions were always focused on AC and never meant to harass defendant in any way; rather, he wanted to see his child after defendant cut off contact. Plaintiff similarly disputed that any of his actions following the stalking conviction, notably his sending checks to defendant while on probation and his recent, unrelated civil lawsuit against defendant, were threats or harassment. With its superior ability to judge witness credibility, the trial court implicitly found that plaintiff's behavior did not significantly affect his parenting ability or the ability of the parties to successfully coparent together. The facts do not clearly preponderate otherwise.

While the parties here certainly had issues and disagreements between themselves, the record does not show a sufficient "deep-seated animosity between the parties and an irreconcilable divergence in their opinions about how to foster [the] child's well-being" such as to preclude joint legal custody. See *Wright*, 279 Mich App at 299. In this case, both parties had significant experience coparenting from prior relationships. And for much of AC's life, the parties were able to come together amicably so both remained present in the child's life. For the foregoing reasons, the trial court did not make findings against the great weight of the evidence, commit a palpable abuse of discretion, or commit clear legal error on a major issue in awarding the parties joint legal custody.

## B. PARENTING TIME

Defendant argues that the trial court erred by awarding plaintiff unsupervised, overnight parenting time. We disagree.

According to defendant, the court, as with its custody determination, failed to provide any substantive supporting rationale for its parenting-time decision. Defendant argues further that it was improper to award plaintiff unsupervised parenting time because he demonstrated a blatant disregard for AC's special needs, has a personality disorder affecting his behavior, and attempted to take AC from defendant's care without the legal authority to do so.

"Parenting time is the time a child spends with each parent." *Lieberman v Orr*, 319 Mich App 79, 80; 900 NW2d 130 (2017). "Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id.*, quoting *Shade v Wright*, 291 Mich App 17, 28-29; 805 NW2d 1 (2010). "A court bases a parenting-time order on its determination of the best interests of the child, and grants parenting time 'in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.' " *Id.*, quoting MCL 722.27a(1). Children have a right to parenting time with their parents "unless the court determines on the record by clear and convincing evidence that parenting time would endanger the child's physical, mental, or emotional health." *Id.*, citing MCL 722.27a(3).

"The trial court may consider the [parenting-time] factors set forth in MCL 722.27a(7),[2] along with the best-interest factors provided in MCL 722.23, when granting parenting time."

---

[2] MCL 722.27a(7) provides:

> The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:
>
> (a) The existence of any special circumstances or needs of the child.
>
> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.
>
> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.
>
> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.
>
> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.
>
> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.
>
> (g) Whether a parent has frequently failed to exercise reasonable parenting time.

*Lieberman*, 319 Mich App at 80-81; see also *Shade*, 291 Mich App at 31-32 ("Custody decisions require findings under all the best[-]interest factors, but parenting time decisions may be made with findings on only the contested issues."). Notably, the Legislature provided that courts "*may*" consider the parenting-time factors when "determining the frequency, duration, and type of parenting time," MCL 722.27a(7) (emphasis added), but courts "*shall*" grant parenting time "in accordance with the best interests of the child," MCL 722.27a(1) (emphasis added).

In this case, the trial court said it "looked to the parenting[-]time factors to determine what is truly in the best interests of the child," presuming that it was in AC's best interests to maintain a strong relationship with both parents. The court then provided the following reasoning, though without any explicit connection to its ultimate parenting-time decision:

> Except as otherwise provided, parenting time shall be granted to a parent in frequency, duration and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time. In the case at hand, Plaintiff went long periods of time without exercising parenting time even when it was afforded to him.

Notwithstanding this somewhat convoluted analysis, we perceive no error in the court's parenting-time decision.

First, the only evidence presented that plaintiff disregarded AC's special needs was how plaintiff slept with the child one time when defendant permitted him overnight parenting time with AC. But nothing indicates the child was ever actually harmed in any way during defendant's time with AC, with only defendant's self-serving testimony linking this isolated occurrence to plaintiff allegedly being unequipped to care for AC and her special needs. Concerning plaintiff's mental health, we previously addressed that the record adequately supports the trial court's finding that plaintiff's mental state, while somewhat concerning, did not significantly affect his parenting ability. Moreover, by not discussing the June 2019 zoo incident, the trial court presumably made a credibility determination to disbelieve defendant's testimony that this incident was an attempted kidnapping.

Ultimately, the record does not support that parenting time with plaintiff would endanger the child's physical, mental, or emotional health and defeat AC's right to parenting time with plaintiff. Defendant's testimony largely centered on how plaintiff's behavior affected her, for example that defendant was terrified after the graffiti incident, without substantiating any harm or potential endangerment to AC. Accordingly, the trial court did not make findings against the great

---

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors.

weight of the evidence, commit a palpable abuse of discretion, or commit clear legal error on a major issue in granting plaintiff unsupervised, overnight parenting time.

## C. CHILD SUPPORT

Defendant argues that the trial court erred by failing to award her child support retroactive to the child's birth and including amounts for healthcare and ordinary medical, child care, and other expenses. We disagree.

According to defendant, the trial court abused its discretion by ignoring her request for retroactive support and the inclusion of ordinary medical, child care, and other expenses. Defendant emphasizes the following facts that allegedly supported her request under MCL 552.452(1)(b) and (c): she never filed a complaint for support because she was fearful of plaintiff's threatening behavior; she had also been encouraging plaintiff to file a custody complaint since at least 2019, which would have allowed AC to receive support much earlier; instead, before this action, plaintiff provided minimal support, and the support he did provide included threatening messages in an accompanying memorandum as a way around a no-contact order put in place after plaintiff's stalking conviction.

Under the Child Custody Act, MCL 722.21 *et seq.*,

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> (a) . . . [P]rovide for payment of support for the child, until the child reaches 18 years of age. . . . [MCL 722.27(1).]

"A judgment or order entered under this act providing for the support of a child is governed by and is enforceable as provided in the support and parenting time enforcement act, 1982 PA 295, MCL 552.601 to 552.650." MCL 722.27(2).

As relevant here, the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*, provides:

> Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:
>
> (a) The child support amount determined by application of the child support formula.
>
> (b) How the child support order deviates from the child support formula.

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [MCL 552.605(2).]

Under MCL 552.602(ii), support "may include payment of the expenses of medical, dental, and other health care, child care expenses, and educational expenses" or payment of money ordered under the Paternity Act, MCL 722.711 *et seq*., "for the necessary expenses connected to the mother's pregnancy or the birth of the child, or for the repayment of genetic testing expenses."[3] In this case, plaintiff's acknowledgment of paternity established his paternity and it could be "the basis for court ordered child support, custody, or parenting time without further adjudication under the paternity act, [MCL 722.711 to MCL 722.730]." MCL 722.1004. Indeed, a "child who is the

---

[3] In pertinent part, MCL 722.712 provides:

(1) The parents of a child born out of wedlock are liable for all of the following:

(a) The medical expenses connected to the mother's pregnancy.

(b) The medical expenses connected to the birth of the child.

(c) The necessary support and education of the child.

(d) The child's funeral expenses.

(2) Subject to subsection (3), if medicaid has not paid a medical expense described in subsection (1)(a) or (b), on request from a parent, the court *in an action brought under this act* shall do all of the following:

(a) If the court determines the expense to be reasonable and necessary, apportion the expense between the parents based on each parent's ability to pay and on any other relevant factor, in the same manner as health care expenses of a child are divided under the child support formula established under section 19 of the friend of the court act, 1982 PA 294, MCL 552.519.

(b) In the court's discretion, if 1 parent has paid the expense, require the parent who did not pay the expense to pay his or her share of the expense to the other parent.

(c) In the court's discretion, at the request of a person other than a parent who has paid the expense, order a parent against whom the request is made to pay to the person the parent's share of the expense.

(d) On request from a parent, require an itemized bill for the expense before making an apportionment under this subsection. [Emphasis added.]

This case was not pursued under the Paternity Act, and, in any event, the record reflects that defendant's gross income was double plaintiff's gross income. Thus, the trial court did not err in failing to award defendant expenses connected to the child's birth.

subject of the acknowledgment" has "the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth."

In the trial court, defendant asserted that retroactive support was warranted pursuant to MCL 552.452(1)(b) and (c), which permits retroactive support from before "[a] complaint for support was filed" only if

> (b) [t]he defendant threatened or coerced through domestic violence or other means the complainant not to file a proceeding under this act[; or]

> (c) [t]he defendant otherwise delayed the imposition of a support obligation.

This language is from the Family Support Act, MCL 552.451 *et seq*., no provisions of which are incorporated within the Child Custody Act as applicable regarding support in custody disputes (in contrast to MCL 552.605, for example, which is expressly incorporated as applicable to custody disputes). Indeed, the language of MCL 522.452(1)(b) and (c) specifically contemplates a defendant's actions and the filing of a complaint for support. See e.g., *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 751-752; 849 NW2d 408 (2014). This action, however, commenced with plaintiff's custody complaint against defendant, and defendant never filed any action for support. Because defendant relied on inapplicable statutory language to support her claim, the trial court did not err by not awarding retroactive child support.[4]

---

[4] In any event, even assuming the statutory provisions defendant identifies applied, she did not qualify for retroactive support. Although defendant argues that she never filed a complaint for support because she was fearful of plaintiff's threatening behavior, the record shows otherwise. Specifically, the parties, at least initially after AC's birth, had a coparenting arrangement worked out between themselves with plaintiff exercising parenting time, albeit limited by defendant more than plaintiff wanted. Defendant did testify that plaintiff's emotional abuse, lack of compassion, and erratic behavior led to the parties' separation, but none of her specific allegations rise to the level of threats or coercion via domestic violence or other means, nor did this alleged behavior affect defendant's freedom to file for support. Defendant contacted counsel as early as the spring of 2019, but she, instead of filing a complaint for support at the time, sought to amicably reach an agreement with plaintiff outside the courts.

Only after the June 2019 zoo incident did plaintiff's conduct, as alleged by defendant, potentially rise to threats and coercion. But as discussed, the trial court seemingly made a credibility determination in disbelieving defendant's interpretation of plaintiff's actions, particularly regarding her assertions that plaintiff tried to kidnap AC and then harassed her throughout his probation and the instant proceedings. As for plaintiff allegedly only sending support as a way to threaten defendant, the record shows only that one of the payments made by plaintiff to defendant during his probation included a memo to say hello to one of defendant's relatives. We do not perceive this as a threat.

Defendant's argument that she is entitled to amounts for healthcare and ordinary medical, child care, and other expenses also fails. Critically, defendant makes no substantive mention of the Michigan Child Support Formula, and she thus fails to explain how the trial court's calculation of child support here was erroneous, or how her proposed calculation was warranted.[5] Instead, defendant merely quotes generally from the statutes governing support in various types of actions, cites her expenses asserted in the trial court, and argues that the court erred by excluding certain amounts and expenses. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). For the foregoing reasons, the trial court did not make findings against the great weight of the evidence, commit a palpable abuse of discretion, or commit clear legal error on a major issue in its calculation of child support.

Affirmed.


/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

Nor do we determine that plaintiff otherwise delayed the imposition of support. As discussed, the parties initially tried to agree on AC's care without court intervention. Plaintiff testified that, once defendant cut off communication with him following the zoo incident, he made immediate efforts to file for custody but was delayed by financial barriers. Accordingly, the record shows that plaintiff attempted to amicably resolve custody between them and, when this was no longer possible, diligently attempted to pursue his rights regarding AC. Nothing indicates any action by him to delay support in this case.

[5] The Uniform Child Support Order reflects that both parties, with limits as to defendant's obligation, are to maintain healthcare coverage for the child's benefit and that uninsured healthcare expenses exceeding $454, the annual ordinary medical amount, are to be divided between them equally. It further reflects the parties are required to notify each other and the FOC of any changes in child care costs, indicating that such costs have already been considered.