*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER RAY MACNEILL,

Plaintiff-Appellee,

v

OPHELIA MAE MCKINNEY,

Defendant-Appellant.

UNPUBLISHED
November 12, 2025
12:22 PM

No. 371521
Alcona Circuit Court
Family Division
LC No. 2023-003834-DP

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

In this paternity action, defendant appeals by right the trial court's judgment granting sole physical custody of the parties' child to plaintiff, granting joint legal custody to both parties, and suspending defendant's parenting time. Defendant also challenges the court's order that she pay child support. We affirm the trial court's judgment to the extent that it grants the parties joint legal custody and grants plaintiff sole physical custody, and we affirm the trial court's child support order. However, we vacate the portion of the trial court's judgment suspending defendant's parenting time because the court did so without finding that there was clear and convincing evidence that parenting time would endanger the parties' child, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties' child began suffering from severe diaper rash shortly after his birth. Plaintiff thought that the rashes appeared to be the result of a food allergy or reaction, but he also did not believe that defendant changed the child's diaper enough. Further, plaintiff testified that he had observed defendant smoking marijuana while caring for the child and that the child had been left alone in the bathtub. According to plaintiff, defendant responded with hostility when he confronted her about both incidents. Defendant denied smoking marijuana around the child and leaving him unattended. Defendant also testified that she took the child to the doctor concerning his diaper rash and was prescribed a topical treatment. Defendant stated that the child experienced rashes because of his type of skin.

-1-

While plaintiff, defendant, and the child were living together, plaintiff filed a complaint for paternity. During the proceedings, defendant moved out. The court granted plaintiff's motion to declare the child's paternity and granted him leave to amend his pleadings to address issues related to custody, child support, and parenting time. Plaintiff thereafter sought joint legal and sole physical custody and supervised parenting time on the basis of an injury that the child sustained in defendant's care and defendant's threat to move with the child to another location in the state. The trial court granted the motion pending a hearing on temporary custody because of the possibility that the child could otherwise suffer irreparable harm.

The court subsequently found that the child had no established custodial environment, that it was in his best interests for plaintiff to have sole physical custody, and that defendant's parenting time should remain supervised. The court ordered that, under the temporary custody order, plaintiff was to have primary physical custody and the parties were to have joint legal custody. The court ordered that supervised parenting time continue three days a week for three hours each visit and ordered the parties to work with the Friend of the Court toward creating a parenting-time schedule that allowed defendant unsupervised parenting time.

In December 2023, plaintiff moved the trial court to order that defendant obtain a psychological evaluation on the basis of her allegedly erratic behavior around the child. Defendant denied the behavior and requested that plaintiff also be required to take a psychological evaluation. At the hearing on the motion, defendant was not represented by counsel. She indicated that she had a psychological evaluation scheduled but would not speak further before obtaining another attorney. Defendant also requested to be contacted by the court's coordinator under the Americans with Disabilities Act ("ADA"), 42 USC 12101 *et seq*., regarding filling out form MC 70.[1] The court ordered both parties to submit psychological evaluations and stated that defendant would need to contact the court's ADA coordinator. After further discussion, the court indicated that it would have someone reach out to defendant about the issue.

Defendant subsequently moved *in propria persona* to disqualify the trial court judge and to change venue, asserting that the judge was violating defendant's due-process rights and had longstanding ties to plaintiff, which resulted in a conflict of interest. Defendant also requested that the case be transferred to a different court. At the hearing on the motion, the topic of defendant's disability paperwork arose. The court stated that defendant had repeatedly been requested to provide letters from her doctors regarding the extent of her disabilities so that the court could determine how to accommodate her. Defendant claimed that the paperwork had already been provided, but she later stated that she had provided it to her former attorneys, and that if they had not given the documentation to the court, "that's their problem." Defendant also stated that she had letters but did not have them with her. Defendant claimed that the court's ADA coordinator was supposed to have filled out the MC 70 form for her, but the court stated that court staff could not fill out the paperwork for her and that she needed to substantiate her disability. Defendant ultimately stated that the accommodation that she needed was to be appointed an attorney, and the

---

[1] Form MC 70 is a standardized form approved by the Michigan State Court Administrative Office for an applicant to request reasonable accommodations for a disability in advance of a court appearance or activity. See SCAO, *Form MC 70* (October 2015).

court indicated defendant had been repeatedly told that an attorney could not be appointed for her in a civil case.

The court denied defendant's motion to disqualify the trial court judge or change venue. The court found that the ADA coordinator had attempted to assist defendant, but defendant had been verbally abusive, used foul language, and yelled at court staff. Defendant also violated court rules by coming to the courthouse with a camera and attempting to videotape staff. The court also noted that it had ordered defendant to obtain a psychological evaluation and that she had not provided one. The court granted defendant 14 days to obtain a psychological evaluation and to provide documentation regarding her disability.

Ultimately, plaintiff moved for a default judgment on the basis that defendant had not provided a copy of her psychological evaluation. Although defendant had provided a psychological evaluation, all of the relevant information had been blacked out. The court stated that it would grant a default judgment because the case had "dragged on" while defendant repeatedly had failed to provide documentation, which left the court unable to address her claims. It also found that the child's food allergies were not being "observed" while the child was in defendant's care and stated that it would suspend defendant's parenting time "pending medical documentation of the child's allergies." Ultimately, the court ordered defendant's parenting time suspended

> based upon the concerns of the court about [defendant's] ability to care for the minor child given her refusal to provide a psychological evaluation which was previously ordered by the court to determine her fitness to parent as well as [defendant's] continuing to feed the minor child food that resulted in severe rashes after being advised not to do so.

The court also adopted its previous temporary order requiring defendant to pay child support. This appeal followed.

## II. STANDARDS OF REVIEW

Regarding custody determinations, this Court must affirm the trial court's decisions unless its factual findings were against the great weight of the evidence, it palpably abused its discretion, or it made a clear legal error on a major issue. MCL 722.28. The trial court's factual findings are against the great weight of the evidence "if the evidence clearly preponderates in the opposite direction." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). Similarly, this Court must affirm the trial court's parenting-time order "unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted). In the child custody context, the trial court palpably abuses its discretion when its result so palpably violates fact and logic that it evidences passion or bias rather than the exercise of reason. *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006). Finally, "[a] trial court commits legal error when it incorrectly chooses, interprets or applies the law." *Merecki v Merecki*, 336 Mich App 639, 645; 971 NW2d 659 (2021) (quotation marks and citations omitted).

-3-

Regarding judicial bias, "[t]his Court reviews for an abuse of discretion a trial court's factual findings regarding a motion for disqualification while its application of the facts to the law is reviewed de novo." *TT v KL*, 334 Mich App 413, 431; 965 NW2d 101 (2020). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. And lastly, this Court reviews de novo issues of constitutional law. *In re Blakeman*, 326 Mich App 318, 334; 926 NW2d 326 (2018).

### III. CUSTODY

Defendant first argues that the trial court made numerous errors when making its custody determinations. We disagree.

First, defendant argues that the trial court erred by changing the child's established custodial environment without a showing of proper cause and without applying the correct burden of proof. The trial court may not issue an order that changes the established custodial environment of a child without clear and convincing evidence that doing so is in the child's best interests. MCL 722.27(1)(c). An established custodial environment "is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). An established custodial environment may be established in more than one home. *Stoudemire*, 344 Mich App at 43.

These requirements are intended to provide the child with a stable environment because "[c]onstant changes in a child's physical custody can wreak havoc on the child's stability, as can other orders that may significantly affect the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017). An evidentiary hearing is mandated before custody can be modified, even on a temporary basis. *Grew v Knox*, 265 Mich App 333, 336; 694 NW2d 772 (2005). A court may not enter an ex parte or interim order without first complying with MCL 722.27(1)(c) if such an order would alter the child's established custodial environment. *Daly v Ward*, 501 Mich 897, 898; 901 NW2d 897 (2017). If a proposed modification would change the child's established custodial environment, the moving party must show by clear and convincing evidence that the change is in the child's best interests. *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). However, if the proposed modification does not change the child's custodial environment, the moving party must show by a preponderance of the evidence that the change is in the child's best interests. *Id*. at 93.

Here, the trial court found that the child did not have an established custodial environment, and the evidence did not clearly preponderate against this finding. At the time that plaintiff filed the paternity case, the family lived together in plaintiff's home, and both parents cared for the child. Defendant stopped residing in the home after plaintiff filed his complaint for paternity. At the time of the hearing, plaintiff and defendant had lived separately for approximately one month. Defendant had moved to property on which she was renovating a cabin and when the child was in her care, she lived in a two-bedroom RV. Thus, contrary to defendant's argument, there is no indication that, after she moved out of the family home, the child grew to naturally look to defendant in their shared environment for guidance, discipline, and comfort. See MCL 722.27(1)(c).

-4-

Defendant also argues that the trial court erred when granting plaintiff sole legal and physical custody, including by incorrectly evaluating several best-interest factors. As an initial matter, defendant's argument regarding legal custody is not supported by the record. The difference between physical custody and legal custody is that "[p]hysical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013). "[G]enerally, the appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 638; 997 NW2d 745 (2022) (quotation marks and citation omitted). In this case, the trial court granted the parties *joint* legal custody of the child.

Defendant also argues that the trial court erred by granting plaintiff sole physical custody because the court should have weighed certain best-interest factors differently. The trial court must make its determination about a child's custody on the basis of the child's best interests. MCL 722.25(1). "Under the Child Custody Act, the overriding concern is the children's best interests." *Kuebler v Kuebler*, 346 Mich App 633, 668; 13 NW3d 339 (2023). To determine what is in the child's best interests, the trial court must consider the sum total of the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

> (h) The home, school, and community record of the child.

> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively

for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

The court must explicitly state its findings under each factor. *Kuebler*, 346 Mich App at 671.

Regarding factor (a), the trial court found that this factor favored both parties. Defendant, however, argues that the trial court erred because she and the child had a long-term attachment, and the court should have favored her. This Court generally defers to the trial court's credibility determinations. *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015). Defendant testified that she had taken care of the child all on her own and that she had been the child's full-time parent before the case was filed. However, plaintiff testified that both defendant and plaintiff cared for the child while the family was residing in plaintiff's home. Plaintiff regularly attended to the child before work, on his breaks, and after work. Defendant testified that she took the child to the doctor regarding his diaper rash, but plaintiff testified that he also consulted with medical professionals about the rash. The court noted that defendant had stated that she had been caring for the baby on her own, but it was clear from the testimony that there had been coparenting. Ultimately, the evidence demonstrated that there was love, affection, and emotional ties between both parties and the child.

Defendant includes as part of her argument under this factor, statements about plaintiff's escalating rage and domestic violence. The best-interest factors do require the trial court to consider "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). But again, "the appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Kilian*, 343 Mich App at 638 (quotation marks and citation omitted). The trial court found that domestic violence was not applicable. The lower court record contains no references to domestic violence, and no testimony regarding domestic violence was provided at any hearing. Defendant testified that plaintiff "attacked" her, but this immediately followed a statement concerning disrespect and in the context of an issue of parental communication. Defendant has not supported her argument that the court erred by finding that domestic violence was not applicable.

Next, defendant argues that trial court should not have found that factor (b) favored plaintiff because plaintiff's work schedule prevents him from giving the child love, affection, and guidance. The trial court found that the factor favored plaintiff because, although both parties provided the child with guidance, plaintiff's structured schedule provided more guidance for the child. Plaintiff testified about his very regular schedule with the child, which included meals, naps, and snacks. Plaintiff also testified that he was on call seven days a week, but he could refuse a call. Further, he had only had to leave in the middle of the night once and was able to do so without disturbing the child. Plaintiff's mother had come to his home, and his mother, the child's sitter, and his

neighbors were willing to provide that service. In contrast, defendant testified that the child did not eat breakfast when he got up because he was not hungry and wanted to play instead; breakfast was eaten later. Plaintiff stated that the child would take a nap on his own and had lunch when he felt like it "because he knows his own body on whether he's hungry or tired." Accordingly, the evidence does not clearly preponderate against the trial court's finding that the factor favored plaintiff.

Lastly, defendant argues that factor (j) did not favor plaintiff because it rewrites history and ignores the law. "It is presumed to be in the best interests of the child to have a strong relationship with both of his or her parents." *Martin v Martin*, 331 Mich App 224, 238; 952 NW2d 530 (2020). Under factor (j), "A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." MCL 722.23(j). The court may consider, however, "[a] parent's fabrications of abuse, or other conduct designed to obstruct or sabotage the opposing parent's relationship with the child . . . ." *Kuebler*, 346 Mich App at 686.

In this case, the court found that the parties' willingness to facilitate a relationship between the child and the other parent favored plaintiff because defendant was not willing to attempt to communicate with plaintiff outside of the court's messaging system, which did not reflect positively on her desire to nurture a good relationship between the child and plaintiff. When asked how she expected to coparent without communicating with plaintiff, defendant testified that she "put it on the courts" and that they should speak through the court's website. The evidence, therefore, did not clearly preponderate against the trial court's finding.

In sum, the trial court's findings regarding the best-interests factors were not against the great weight of the evidence, and we affirm the trial court's order granting the parties joint legal custody and plaintiff sole physical custody.

## IV. PARENTING TIME

Next, defendant argues that the trial court improperly suspended her parenting time because there was a lack of evidence to support the court's decision. We agree.

"Parenting time shall be granted in accordance with the best interests of the child." MCL 722.27a(1). "A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). A parent has a significant interest in the companionship, care, custody, and management of a child which may be withdrawn only when clear and convincing evidence demonstrates that the parenting time would endanger the child. *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 8. It is inappropriate to suspend parenting time when there is no admissible evidence of endangerment that can be attributed to solely one parent. *Id*. at ___; slip op at 11.

Concerning parenting time, the trial court stated:

> THE COURT ORDERS AND ADJUDGES that [defendant's] parenting time is hereby suspended based upon the concerns of the court about [defendant's]

-7-

ability to care for the minor child given her refusal to provide a psychological evaluation which was previously ordered by the court to determine her fitness to parent as well as [defendant's] continuing to feed the minor child food that result in severe rashes after being advised not to do so.

The order does not include any reviewable findings that defendant's deficiencies would endanger the child's health. Instead, the primary rationale offered is defendant's refusal to provide a psychological evaluation and her decision to feed the child food that resulted in rashes. Because there were no findings that the stated reasons for denying parenting time would "endanger the child's physical, mental, or emotional health," see MCL 722.27a(3), the court made a clear legal error on a major issue when it suspended defendant's parenting time, and we must vacate that portion of the order. On remand, defendant is entitled to supervised parenting time while the parties and the court reexamine the issue. See Kuebler, 346 Mich App at 674 (stating that the defendant's "manipulative and alienating behavior" that "posed a danger to the children" justified supervised parenting time).

## V. JUDICIAL BIAS

Defendant also contends that the court erred when ruling against her motion to disqualify the judge. We disagree.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017). The party who alleges that a judge is biased must overcome the heavy presumption in favor of judicial impartiality. *Id.* Among other grounds, a judge may be disqualified for reasons that include bias or connection to lawyers or witnesses:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

> * * *

> (g) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

> (i) is a party to the proceeding, or an officer, director, or trustee of a party;

> (ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding. [MCR 2.003(C) (alteration in original).]

First, defendant argues that the judge had a direct, substantial, and pecuniary interest in the matter because the judge knew plaintiff personally. It is defendant's burden to verify the factual basis of her arguments. *Kilian*, 343 Mich App at 638. In this case, the judge stated that she knew the name of plaintiff's family from the community, which was small and rural and had several large families, but no one in the court had a relationship with plaintiff. Thus, there is no support in the lower court record for plaintiff's having a direct relationship with the judge.

We can also discern no deep-seated favoritism or antagonism in the trial court's treatment of defendant. The numerous transcripts reflect that the trial court treated defendant with courtesy despite an increasing level of frustration with defendant's conduct. Defendant focuses on the judge's statement that "any mental or physical abuse you think you may have endured at the hands of the legal system is a figment of your imagination." However, this is not the type of deep-seated antagonism that overcomes the presumption in favor of judicial impartiality, especially in light of defendant's inappropriate conduct during the proceedings. Further, regarding whether the court agreed with CPS's determinations to not remove the child from defendant's care, any mistakes in the court's ruling regarding defendant's fitness as a parent do not rise to the level of establishing judicial bias.

To the extent that defendant attempts to support her judicial bias argument with alleged irregularities in the paternity proceedings, this argument lacks merit. The Paternity Act provides a court may establish paternity in a number of ways, including if "the mother acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity." At the paternity hearing, defendant repeatedly stated that she knew that plaintiff was the child's father. Thus, there were no irregularities concerning paternity.

Third, defendant argues that, after she recorded court staff with her portable camera, she was "attacked" by staff stating that she could not record in the courthouse when there was no notice posted. Subject to permitted media coverage, "[i]n areas of a courthouse other than courtrooms, no one may photograph, record, broadcast, or live stream an individual without that individual's prior express consent." MCR 8.115(C)(3)(b). A courthouse includes all areas within the exterior walls of a court building, including those used "for the administration and operation of the court." MCR 8.115(C)(2)(b). Thus, court staff did not demonstrate bias against defendant by informing her that she could not use her camera in the courthouse.

VI. ADA VIOLATION

Lastly, defendant argues that she was denied her right to due process when the trial court required her to proceed in this matter without accommodating her disabilities. We disagree.

The United States and Michigan Constitutions provide that the People have the right to petition the government for the redress of grievances. US Const Am I; Const 1963, art I, § 3. A

party has a due-process right to reasonable access to the courts for civil legal matters. See *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 463; 639 NW2d 332 (2001). Congress enacted the ADA in part "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 USC 12101(b)(1). The ADA recognizes that "discrimination against individuals with disabilities persists in such critical areas as . . . access to public services." 42 USC 12101(a)(3). However, "the plaintiff bears the overall burden of demonstrating under the ADA that he is a qualified individual with a disability . . . ." *Peden v Detroit*, 470 Mich 195, 208; 680 NW2d 857 (2004).

In this case, defendant was repeatedly informed that she needed to provide documentation of her disability and fill out a standardized form to request reasonable accommodations for a disability. At times during the proceedings, defendant indicated that she had documentation, but she refused to provide it to the court, instead stating that her former attorneys had the information and, "[i]f they didn't do that, that's their problem." There is no indication in the lower court record that defendant ever provided the court with the requested documentation—despite stating that she had it and being given numerous attempts and directions to do so—or that defendant filled out form MC 70 or otherwise demonstrated that she was an individual with a disability. Without having documentation establishing defendant's disability or what could be done to accommodate her, the court did not deprive defendant of her rights.

We vacate the portion of the trial court's judgment suspending defendant's parenting time and remand for further proceedings consistent with this opinion. In all other respects, we affirm. We do not retain jurisdiction. And because neither party prevailed in full, no costs may be taxed. See MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello